# McCULLOCH | KLEINMAN
### INTELLECTUAL PROPERTY ATTORNEYS

April 16, 2021

**VIA ECF AND E-MAIL**
The Honorable John P. Cronan
United States District Court, Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

    Re:  *Spurlock, et al. v. Thomson Reuters, et al.*, No. 20-cv-09135-JPC (S.D.N.Y.)

Dear Judge Cronan,

This firm represents Plaintiffs in the above-referenced case. I write in response to the pre-motion letter submitted by Defendant Thomson Reuters America Corp. ("Reuters") dated April 13, 2021 (Dkt. No. 48 ("Def. Letter")) on behalf of itself and Co-Defendants Adobe Inc., Sipa Press, Inc., and Real Time Images (collectively, the "Moving Parties").

### *Background*

Plaintiffs are a group of 11 freelance photographers who make their living by taking and licensing news- and sports-related photographs for editorial use. (Compl. ¶ 3.) Plaintiffs license their photos primarily through Imagn Content Services, LLC ("Imagn"), a division of the USA Today Network. (*Id.* ¶ 29.) Although Plaintiffs license their photos through Imagn as a licensing agent, they always have retained copyright ownership in and to such photos. (*Id.* ¶¶ 31-33.) Plaintiffs assert claims for copyright infringement against all Defendants, including the Moving Parties, arising from the unauthorized copying, display, distribution, and sale of Plaintiffs' copyrighted works. (*Id.* ¶¶ 63-66.) The Moving Parties now seek to dismiss the Complaint on multiple grounds, none of which has any merit.

### *Anticipated Grounds for Motion*

    1. <u>Standing.</u> Despite their contributor agreements expressly stating that Plaintiffs retained copyright and would "at all times be the sole and exclusive owner" of their photos, the Moving Parties intend to argue that Plaintiffs lack standing to bring these claims on the grounds that "Plaintiffs not only granted Imagn an exclusive copyright license; they also contracted away their right to sue for infringement." (Def. Letter at 2.) This assertion is based on a shallow and incomplete reading of the contracts, and is contrary to settled law.

As an initial matter, the Moving Parties' assertion that "Plaintiffs do not plead that they received Imagn's written permission to institute this suit" plainly attempts to raise a factual issue that is entirely beyond the pleadings and involves a contractual term with a non-party, which cannot be resolved on a Rule 12 motion to dismiss. The argument also misconstrues the low pleading requirement under the Federal Rules and ignores that claimants are not required to plead responses to potential affirmative defenses to state a claim. Even if this issue could be considered, the evidence will show that Plaintiffs expressly notified Imagn of these claims and their intent to file

this action, and Imagn made clear that it did not intend to exercise any *alleged* authority to bring such claims, and never objected to Plaintiffs' notice that they intended to sue. Further, the Moving Parties' Letter misleadingly quotes only the 2020 iteration of Imagn's contributor agreements – which the majority of Plaintiffs never signed – and most Plaintiffs' contracts do not purport to require "written permission" to pursue claims. In any case, this issue is not relevant to Plaintiffs' Article III standing to bring these claims. As both the legal and beneficial owners of rights under the Copyright Act, Plaintiffs' standing cannot be conditioned on obtaining Imagn's "permission" to enforce their rights as a matter of law. *See* 17 U.S.C. § 501; *Silberman v. Innovation Luggage, Inc.,* No. 01 Civ. 7109(GEL), 2003 WL 1787123, at *7, n. 5 (S.D.N.Y. Apr. 3, 2003) ("[E]ven if [the photographer] were no longer the legal owner of that right, he could still have standing to sue as beneficial owner of that right, based on royalties received or other indicia of control.").

Moreover, a full reading of the contracts – rather than cherry-picked terms – demonstrates that Defendants are mistaken that Plaintiffs supposedly granted an "exclusive license" to Imagn as that term is defined under the Copyright Act for purposes of relinquishing standing to sue. Plaintiffs' contracts with Imagn includes multiple express provisions confirming that Plaintiffs retained rights under Section 106 of the Copyright Act, and without a transfer of truly exclusive ownership of any Section 106 rights, a copyright owner cannot confer to a licensee the "bare right to sue" as a matter of law. *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 113-14 (S.D.N.Y. 2012).

    2. <u>Release.</u> The Moving Parties' argument regarding a purported "release" being granted by Imagn also relies entirely on extrinsic facts and documents that cannot be considered on a motion to dismiss, as the Letter concedes. Indeed, these agreements were negotiated months after this lawsuit was filed and without Plaintiffs' knowledge or involvement, plainly precluding the Court from considering arguments for dismissal based thereon without an opportunity for discovery. And discovery certainly will be crucial here given that the Moving Parties conveniently fail to advise the Court that Imagn not only declined to exercise any alleged authority to bring these claims, and thus abandoned its purported right to settle them, it also never raised any objection to Plaintiffs bringing this lawsuit and expressly agreed to participate in a mediation against it involving these same claims against Defendants here. Despite being aware of Plaintiffs' intent to bring these claims for over a year, and this lawsuit pending for many months, Imagn only chose to reverse course and attempt to insert itself into these claims once mediation proved unsuccessful and it faced the prospect of indemnifying the Defendants. That is crucial because Imagn's indemnification obligation arises from its own direct involvement in the misconduct alleged here, confirming it has an intractable conflict of interest and cannot possibly have the right to act "on behalf and in the name of" Plaintiffs in settling claims *against itself*. Indeed, Defendants also fail to advise the Court that Imagn has been served with a demand for arbitration asserting contributory and vicarious claims for infringement related to its dealings with Defendants and expressly seeking a declaratory judgment to void these sham and unconscionable release agreements.

As discussed above, Imagn is *not* the exclusive owner of any rights under Section 106 of the Copyright Act, and thus it has no ownership interest in the claims it purported to settle on Plaintiffs' behalf, and the provision it relied on to do so is contrary to law. Moreover, even if Imagn did have an ownership interest in Plaintiffs' claims, the Second Circuit has emphatically rejected this kind of *ex parte* attempt to extinguish accrued *and pending* infringement claims held by co-owners and owners of copyright. *See Davis v. Blige,* 505 F.3d 90, 104 (2d Cir. 2007) ("An owner who wishes to release unilaterally his own accrued claims may do so using whatever language he chooses . . .



but such an agreement cannot have the effect of eviscerating a co-owner's claims based on past copyright infringement, nor can it settle accrued claims held by co-owners who are not themselves parties to the agreement"). Imagn's shockingly bad faith conduct – ostensibly done in Plaintiffs' name and on which the Moving Parties now attempt to hang their hat – cannot be and is not tolerable under any theory of law, and the purported releases provide no comfort to Defendants.

    3.  <u>Failure to state a claim.</u>  The Moving Parties further contend that the Complaint is deficient under Rule 8 because Plaintiffs alleged "on 'information and belief,' that Defendants' licenses did not permit them to distribute images 'on an *a la carte* basis.'" (Def. Letter at 3.) This is a mischaracterization of the allegations. The Complaint alleges that "[u]pon information and belief, Defendants did not obtain a license or proper authority to sell and distribute Plaintiffs' image archives on an *a la carte* basis prior to doing so, and/or acted outside the scope of any license(s) obtained." (Compl. ¶ 44.) As such, Plaintiffs have alleged, on information and belief and in the first instance, that <u>no license exists</u>. (*See id*. ¶ 64 (alleging that Defendants copied/distributed the photos "without first obtaining a valid license or permission from Plaintiffs or Imagn").) In the alternative, Plaintiffs allege that Defendants acted outside the scope of any purported license by selling Plaintiffs' photos on an *a la carte* basis. Given that this license information – which Plaintiffs repeatedly requested prior to filing suit and Imagn, Reuters, and Adobe all refused to provide – remains in Defendants' sole possession, there is nothing improper about pleading on information and belief. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

The Moving Parties also argue that the Complaint is deficient because it "does not provide adequate notice of which works were allegedly infringed." (Def. Letter at 3.) Again, this assertion is baseless and does not support dismissal of the claims. Plaintiffs allege that "[b]ecause information regarding the scope of third-party sellers' display and sale of Plaintiffs' photographs remains in Defendants' and Imagn's possession, Plaintiffs are not able to determine the full scope of use at this time" (Compl. ¶ 40) but that *all* of their registered photos are believed to have been copied by Defendants. Plaintiffs' respective registration information is listed in Exhibits 3-13 (*id*. ¶¶ 61-62) and specific examples are shown in Exhibits 1-2. The registrations cover specific time periods and in many cases list which specific sporting events are covered thereunder. Such information is sufficient to satisfy the basic notice requirement under Rule 8, particularly given that Defendants remain in sole possession of certain facts and are easily capable of determining which specific photos they have displayed and offered for sale belonging to Plaintiffs. *See Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015).

Plaintiffs' proposed briefing schedule is included on the following page. The proposed schedule is based on the understanding that the Moving Parties will be filing a single, consolidated motion rather than separate motions/briefs for each party, in which case additional time may be necessary.

                                                      Respectfully submitted,

                                                      /s/ Kevin P. McCulloch    /
                                                      *Counsel for Plaintiffs*

cc:     Hon. Barbara C. Moses
          All counsel of record (via email and ECF)



## **Plaintiffs' Proposed Briefing Schedule**

| | |
|---|---|
| Motion | April 23, 2021 |
| Opposition | May 14, 2021 |
| Reply | May 28, 2021 |

