## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

BRIAN SPURLOCK; STEVEN MITCHELL;
ADAM HUNGER; THOMAS RUSSO; GREG
COOPER; STEWART MILNE; NOAH MURRAY;
IAN RUTHERFORD; STEVEN FLYNN; JAMES E.
BROWN; and MARK ZEROF,

                     *Plaintiffs,*

   v.

THOMSON REUTERS AMERICA
CORPORATION; ADOBE INC.; SIPA PRESS,
INC.; MAINSTREAM DATA, INC. d/b/a
NEWSCOM; TT NEWS AGENCY; NTB
SCANPIX; SCANPIX BALTICS; SCANPIX
DENMARK; PRESSE SPORTS; IMAGEGLOBE
d/b/a BELGA IMAGE; REAL TIME IMAGES; and
JOHN DOE COMPANIES 1-10,

                   *Defendants.*

No. 20-cv-09135-JPC

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, OR TO STAY PENDING ARBITRATION

PATTERSON BELKNAP WEBB & TYLER LLP
Robert P. LoBue
David S. Kleban

*Counsel for Defendant Thomson Reuters America
Corporation*

MILLER KORZENIK SOMMERS RAYMAN LLP
David Korzenik
Terence Keegan

*Counsel for Defendant Sipa Press Inc.*

VENABLE LLP
Meaghan H. Kent (*pro hac vice*)
William C. Lawrence

*Counsel for Defendant Adobe Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    **A.**    The Rights Granted in the Contributor Agreements ................................ 4

    **B.**    Imagn's Exclusive Right to Prosecute and Settle Infringements ............................ 5

    **C.**    The Releases .......................................................................... 6

    **D.**    The Arbitration ...................................................................... 7

ARGUMENT ................................................................................................................... 7

**I.**    The Court Should Dismiss This Action for Lack of Standing ............................. 7

**II.**    The Complaint Fails to State a Claim Because Plaintiffs' Theory of Use Beyond the Scope of the License Is Inconsistent with the Contributor Agreements They Signed .......................................................................................... 11

**III.**    The Complaint Fails to State a Claim Because Plaintiffs Have Failed to Identify the Works Alleged to Have Been Infringed ..................................................... 13

**IV.**    In the Alternative, the Court Should Grant Summary Judgment Because Plaintiffs Have Released Defendants ............................................................ 14

**V.**    Alternatively, the Court Should Stay This Action to Await the Result of Plaintiffs' Arbitration Against Defendants' Licensor ......................................... 16

CONCLUSION ............................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
    458 F. Supp. 2d 160 (S.D.N.Y. 2006)........................................................................16

*Benjamin v. Traffic Executive Assoc. Eastern Railroads*,
    869 F.2d 107 (2d Cir. 1989)....................................................................................18

*BSG Res. (Guinea) Ltd. v. Soros*,
    No. 17-cv-2726, 2017 WL 5897450 (S.D.N.Y. Nov. 29, 2017)............................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...............................................................................................14

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).....................................................................................3

*Cole v. John Wiley & Sons, Inc.*,
    No. 11-cv-2090, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)..............................13

*Commonwealth Ins. Co. v. Thomas A. Greene & Company, Inc.*,
    709 F. Supp. 86 (S.D.N.Y. 1989) .........................................................................18

*Essex Music, Inc. v. ABKCO Music & Records, Inc.*,
    743 F. Supp. 237 (S.D.N.Y. 1990) ...................................................................9, 10

*Gorbaty v. Kelly*,
    No. 01-cv-8112, 2003 WL 21673627 (S.D.N.Y. July 17, 2003)............................3

*Invista S.À R.L. v. E.I. du Pont de Nemours & Co.*,
    No. 08-cv-7270, 2010 WL 11712412 (S.D.N.Y. Mar. 31, 2010)..........................17

*John Wiley & Sons, Inc. v. DRK Photo*,
    882 F.3d 394 (2d Cir. 2018)...................................................................................10

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ............................................................................13

*Knight MPIC Ventures, LLC v. Higginson*,
    No. 18-cv-8126, 2020 WL 550654 (S.D.N.Y. Feb. 4, 2020) ................................16

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000)...................................................................12

## TABLE OF AUTHORITIES *(continued)*

**Page(s)**

*Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*,
　　No. 92-cv-2236, 1992 WL 249914 (S.D.N.Y. Sept. 22, 1992) ..............................................18

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
　　795 F.3d 997 (9th Cir. 2015) ..........................................................................................8, 9

*Moore v. Interacciones Global, Inc.*,
　　No. 94-cv-4789, 1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) .........................................17, 18

*Purjes v. Plausteiner*,
　　No. 15-cv-2515, 2016 WL 552959 (S.D.N.Y. Feb. 10, 2016) ..................................................3

*Sternkopf v. White Plains Hosp.*,
　　No. 14-cv-4076, 2015 WL 5692183 (S.D.N.Y. Sept. 25, 2015) ..............................................3

*Stockfood Am., Inc. v. Adagio Teas, Inc.*,
　　475 F. Supp. 3d 394 (D.N.J. 2020) ...................................................................................9, 10

*Two Pepper Music v. Rhino Records, Inc.*,
　　173 F.3d 846 (2d Cir. 1999).................................................................................................9

*UBS AG, Stamford Branch v. HealthSouth Corp.*,
　　645 F. Supp. 2d 135 (S.D.N.Y. 2008)...................................................................................15

*United States Naval Inst. v. Charter Communs., Inc.*,
　　936 F.2d 692 (2d. Cir. 1991).................................................................................................10

*W.W.W. Assocs. v. Giancontieri*,
　　77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ...........................................................................12

*WorldCrisa Corp. v. Armstrong*,
　　129 F.3d 71 (2d Cir. 1997).................................................................................................17

*Yamashita v. Scholastic Inc.*,
　　936 F.3d 98 (2d Cir. 2019)..................................................................................................12

**Statutes**

17 U.S.C. § 106.................................................................................................................8, 10

17 U.S.C. § 501(b) ............................................................................................................7, 9

## **TABLE OF AUTHORITIES** *(continued)*

**Page(s)**

**Other Authorities**

Nimmer on Copyright (2021) ....................................................................................9, 19

Restatement 3d of Agency § 6.07(2) ......................................................................15, 16

Fed. R. Civ. P. 12................................................................................................1, 3, 12

Fed. R. Civ. P. 56(a) ................................................................................................14

Defendants Thomson Reuters America Corporation ("Reuters"); Adobe Inc. ("Adobe"); and Sipa Press, Inc. ("Sipa") (the "Defendants")[1] move (i) to dismiss the complaint under Rule 12(b)(6) for three independent reasons: Plaintiffs lack standing, they fail to state a claim because their allegations contradict the licenses they granted on their face, and they have failed to properly identify the alleged infringed works; alternatively (ii) for summary judgment in Defendants' favor on grounds of release; and alternatively (iii) to stay this action pending the result of an arbitration commenced by Plaintiffs against non-party Imagn Content Services, LLC ("Imagn").

## PRELIMINARY STATEMENT

This action concerns the business of professional sports photography and the distribution of those images to the news media.  As the Complaint explains, the "Plaintiffs are freelance photographers who make their living primarily by obtaining media credentials to photograph sporting events and then subsequently licensing their photographs to various media outlets." (Compl. ¶ 28.)  They entered into written contracts with Imagn to distribute their works on an exclusive basis.  Those contracts evidence what the photographers got out of the arrangement: assignment fees, credentials provided to them by Imagn to major sporting events, a platform for distribution of their works far beyond what any of them could have achieved individually, and royalties for sales of their photographs made by Imagn either directly or through downstream business partners.  In exchange, Plaintiffs expressly granted to Imagn the ***exclusive right*** to license, enforce, settle disputes concerning, and sue for infringement of their copyrights. This exclusivity is central to the bargain struck by the photographers and Imagn, and to Imagn's

---

[1] The term "Defendants" is used throughout this brief to identify the moving defendants.  The remaining named Defendants are subject to a stipulation and order extending their time to respond to the Complaint until after this motion is decided (ECF 53).

ability to market its catalogue to other media entities, because it provides the assurance that Imagn's business partners will only deal with Imagn and not be required to separately engage with numerous contributors.

The Defendants are among those business partners: media companies that contracted directly, or indirectly, with Imagn to utilize the body of photography controlled by Imagn. Despite the explicit language of their contracts, Plaintiffs have now sued Defendants for copyright infringement. If required to do so in this litigation, Defendants will demonstrate that they were duly licensed by Imagn to distribute and sub-distribute the Plaintiffs' works, and paid Imagn handsomely for those rights. But this motion addresses the threshold issue that Plaintiffs do not have the right to sue at all. Rather, Plaintiffs contracted away the right to sue regarding the photographs in question, and thus lack standing to bring this case. What is more, Imagn exercised the rights that Plaintiffs granted Imagn as their agent and settled and ***released*** Defendants from the claims in this lawsuit.

Undeterred by the language of the agreements they signed with Imagn, Plaintiffs now seek double recovery from Defendants, while they have also commenced a parallel arbitration against Imagn seeking to retroactively nullify the contracts they signed; declare the releases invalid; and hold Imagn liable for infringement of the same copyrights sued on in this action. The Court should not allow this audacious ploy to proceed.

Defendants move the Court to dismiss this case because the Plaintiffs lack standing and alternatively for summary judgment because their claims against Defendants have already been settled and released by Imagn, the true party with standing to bring such claims. Further, the Complaint fails to state a claim because Plaintiffs' allegations contradict the licenses on their face, and they have failed to properly identify the alleged infringed works. Alternatively, and

only if the Court concludes that this case is not ripe for immediate dismissal, Defendants move to stay this action pending the arbitration now underway between the Plaintiffs and Imagn.

## STATEMENT OF FACTS

Plaintiffs are freelance photographers who have entered into "Contributor Agreements" in which they grant non-party Imagn exclusive rights to their photographs.  The Complaint admits that Plaintiffs license their photographs through Imagn, which is alleged to be part of the "USA Today Network."  (Compl. ¶ 29.)[2]  Reuters and Sipa are licensees of Imagn, and Adobe is a sub-licensee of Reuters.  Nevertheless, the Complaint alleges that Defendants infringed Plaintiffs' copyrights in their photographs by distributing them in ways that exceeded their licenses.  (Compl. ¶ 44.)

The Contributor Agreements submitted herewith (*see* Declaration of David S. Kleban, ¶ 2 and Exh. 1) ("Kleban Decl.") are referenced in and integral to the Complaint, and the Court may consider them on a motion to dismiss under Rule 12;[3] moreover, the complete agreements have been submitted and authenticated by Plaintiffs in their arbitration demand against Imagn and may also be judicially noticed on this basis (*see* Kleban Decl. Exh. 1).[4]

---

[2] Imagn and its affiliates and predecessors will be referred to in this brief as "Imagn." All of the alleged "illustrative" infringements, compiled in Exhibits 1 and 2 of the Complaint, are credited to USA Today.  In certain earlier forms of the Contributor Agreement, the licensee is referred to by the name of one of Imagn's predecessors, including "USA Today Sports Images" and "US Presswire, LLC."

[3] *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court may consider documents "integral" to pleading such as contracts signed by plaintiffs with record company defendants granting certain rights in dispute).

[4] "The Court may take judicial notice of . . . filings in an arbitration proceeding."  *Purjes v. Plausteiner*, No. 15-cv-2515, 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016); *Sternkopf v. White Plains Hosp.*, No. 14-cv-4076, 2015 WL 5692183, at *5 (S.D.N.Y. Sept. 25, 2015) (same); *Gorbaty v. Kelly*, No. 01-cv-8112, 2003 WL 21673627, at *2 n.3 (S.D.N.Y. July 17, 2003) (taking judicial notice of arbitration complaint and award).

### A.     The Rights Granted in the Contributor Agreements

In Section 1 of the Agreements, Plaintiffs granted to Imagn (referred to as the "Agency")

the following exclusive license, which expressly includes the right to sublicense:

> <u>Grant of Authority</u>. Photographer hereby grants to Agency the
> exclusive worldwide right to use, copy, perform, display, market,
> distribute, license, sub-license and negotiate the production rights of
> all photographic images, digital files, video images or footage and
> all other photographic materials that are delivered to Agency by
> Photographer (including Stock images (as defined below),
> collectively the "Images"), in any and all media, now known or
> hereafter developed, whether such Images are created by
> Photographer while working under credentials issued from or
> through Agency or otherwise.

(*See, e.g.*, Spurlock Contributor Agreement, Attachment 4 to Kleban Decl. Exh. 1, ¶ 1.) The

granting clause goes on to reserve a "limited right to license the Images to Photographer's own

editorial clients provided that (a) such editorial clients do not compete with [Imagn] or its

customers. . . ."  (*Id.*)

Paragraph 5 of the Contributor Agreements confirms that Imagn is granted plenary rights

and complete discretion as to the use and licensing of the Plaintiffs' photographs:

> <u>Use of Images</u>. Agency and its affiliates, successors and assigns
> shall have the right, in their sole and absolute discretion, to: (i)
> determine how the Images will be marketed, displayed and
> distributed to Agency's customers; (ii) edit, crop or modify the
> Images, including the captions and metadata that accompanies the
> Images: (iii) establish the terms and conditions, including the fees,
> for the license of the Images to Agency's customers; and (iv)
> perform its services without Photographer's further approval.

(*Id.* ¶ 5.)

The agreements contemplate that the photographer will operate under "credentials issued

from or through Agency" (*id.* ¶ 2).  In exchange for their grant of rights to Imagn, the Plaintiffs

received those credentials and assignment fees payable by Imagn for assigned events they cover

as well as additional payments for certain uses (*id.* ¶ 6).

Contrary to the central grievance in the Complaint, nothing in the Contributor Agreements purports to withhold from Imagn the right to sell or sub-license so-called "a la carte" or one-off uses of Plaintiffs' photographs (*cf.* Compl. ¶¶ 36-37, 64-65).  In fact, several of the Plaintiffs' Contributor Agreements mention a la carte licensing and specify how royalties from such uses are to be handled.  (*See, e.g.*, Spurlock Contributor Agreement, Attachment 4 to Kleban Decl. Exh. 1, ¶ 6(b)(iii)) ("A la carte fees licensing fees [*sic*] and quarterly reports of Images or Stock Images shall be paid in addition to the assignment fees set forth above.").[5]  The agreements of the other Plaintiffs replace that language with even more explicit terms confirming that the daily assignment fees are "in lieu of any other compensation for the use of Images by Agency's customers, including but not limited to additional royalty payments."[6]

## B.      Imagn's Exclusive Right to Prosecute and Settle Infringements

Plaintiffs allege that they never authorized Imagn "to act on their behalf" with regard to infringement of their copyrights, and "never authorized or permitted Imagn to settle or release any copyright claims . . . against any third parties."  (Compl. ¶ 34.)  Those allegations are false. The Contributor Agreements grant Imagn the "exclusive" and "complete" right and authority on their behalf to prosecute claims for infringement using one of two similar clauses.  One version of Section 7 of the agreements provides:

> Unauthorized Use of Images. Photographer hereby grants Agency the exclusive right and authority to make claims or to institute proceedings for the infringement, misuse or unauthorized use of the Photographs, and to take any such action in its own or Photographer's name to prosecute such use, or to refrain from taking any action…. All settlements shall be made in Agency's sole and

---

[5] This language appears in the Hunger, Spurlock, Cooper, Brown, Zerof, Milne, Mitchell and Russo agreements, respectively Attachments 2, 4, 8, 9, 11, 13, 14, and 15 to Arbitration Demand, Kleban Decl. Exh. 1.

[6] This language appears in the Flynn, Murray and Rutherford agreements, respectively Attachments 7, 10, and 12 to Arbitration Demand, Kleban Decl. Exh. 1.

absolute discretion, with settlement proceeds to be split equally with Photographer.  If Agency chooses not to pursue any such claim, Photographer may do so only if granted written permission by Agency.[7]

The second version of Section 7 states:

> Unauthorized Use of Images. In case of damage, destruction, loss or unauthorized use of any Images by any customer who lawfully obtained Images from Agency, Photographer hereby grants Agency full and complete authority to make claims or to institute proceedings in Photographer's name to prosecute such unauthorized use. In no event, however, shall Agency be liable for such unauthorized use nor shall Agency be required to take any action to prosecute such unauthorized use. Any recoveries shall be divided between Photographer and Agency 50/50, after deduction for the costs of any such actions incurred by Agency, including, without limitation, legal fees or other expenses. All settlements shall be made in Agency's sole and absolute discretion. If Agency chooses not to pursue any legal action. Photographer reserves the right to do so after notification from Agency.[8]

Finally, each of the Contributor Agreements entered into with Imagn by the Plaintiffs includes a mandatory arbitration clause (*see, e.g.*, Spurlock Contributor Agreement, Attachment 4 to Kleban Decl. Exh. 1, ¶ 11(b)).

### C.    The Releases

In 2020, Reuters and Sipa learned of complaints from certain photographers that Imagn had allegedly not compensated them for certain observed uses in the media of their photographs. These Defendants investigated and entered into negotiations with Imagn to resolve these issues and believed they had done so.  Reuters made an additional payment to Imagn for some licensed

---

[7] This language is found in Section 7 of agreements signed by Plaintiffs Flynn, Murray and Rutherford, respectively Attachments 7, 10 and 12 to Arbitration Demand, Kleban Decl. Exh. 1.

[8] This language is found in Section 7 of agreements signed by Plaintiffs Hunger, Spurlock, Cooper, Zerof, Milne, Mitchell and Russo, respectively Attachments 2, 4, 8, 11, 13, 14 and 15 to Arbitration Demand, Kleban Decl. Exh. 1.

uses that remained outstanding, while Sipa demonstrated to Imagn's satisfaction that all uses had

been properly accounted for.  Once Plaintiffs filed this action, however, Defendants recognized

that Plaintiffs were acting in complete disregard of the authority they had granted Imagn to

resolve disputes of this nature.  To protect themselves and their sub-licensees, and in reliance on

Imagn's authority set forth in Section 7 of the Contributor Agreements, Reuters and Sipa each

entered into formal settlement agreements with Imagn.  Pursuant to those agreements, Imagn

released any claims that could have been made by Imagn *or by the Plaintiffs* against Reuters,

Sipa, and their sub-licensees (including Defendant Adobe, a sub-licensee of Reuters) for the

alleged infringement of the Plaintiffs' copyrights.  *See* Attachments 16 and 17 to Kleban Decl.

Exh. 1 (the "Releases").

>        **D.**       **The Arbitration**

Defendants notified Plaintiffs on March 9, 2021 that Imagn had released Defendants from

the claims made in this action and, on the following day, provided Plaintiffs with copies of the

Releases.  Thereafter, on April 13, 2021, all of the Plaintiffs in this action, joined by three other

claimants, initiated an arbitration (the "Arbitration") against Imagn pursuant to the arbitration

clauses found in their Contributor Agreements with Imagn (*see* Arbitration Demand, Kleban

Decl. Exh. 1) (the "Demand").  The Demand is a 48-page pleading that lays out an array of

grievances of the photographers against Imagn, including a count seeking a declaratory judgment

that the Releases that Imagn granted to Defendants were issued in violation of Imagn's alleged

fiduciary duties to the photographers.

>                                  **ARGUMENT**

**I.**       **THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF STANDING**

The Copyright Act, 17 U.S.C. § 501(b), confers standing to sue for infringement on the

"legal or beneficial owner of an exclusive right under a copyright."  Because the rights embraced

in a copyright are divisible, this confers standing on an exclusive licensee of any of the rights under copyright enumerated in 17 U.S.C. § 106, such as the right to make reproductions of the work and to so license others.  Here, in the rights-granting language of Section 1 of the Contributor Agreements, Imagn has been given just such an exclusive license.

The Ninth Circuit so held in *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1000 (9th Cir. 2015).  In *Minden,* a number of photographers entered into contributor agreements with Minden, an exclusive agent, that are substantially the same as those at issue here.  In those agreements, as here, the photographers appointed Minden "sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images."  As here, the agency agreements in *Minden* stated, "[a]ll images shall at all times remain the sole and exclusive property of the Photographer, including the copyright."  And, as here, the agency agreements in *Minden* "generally permit the photographers to issue some licenses themselves, subject to the terms of the individual Agreements, but prohibit them from hiring a licensing agent other than Minden."  *Id.* at 1000.  Further, as in this case, the agreements in *Minden* conferred on Minden the right to sue infringers of the photographers' works.  When Minden sued John Wiley & Sons for unauthorized reproductions of those works, the defendant moved to dismiss on the ground that Minden was not an owner of an exclusive right having standing to sue under section 501(b).  The Court of Appeals disagreed, holding instead that Minden—like Imagn—was indeed such an owner:

> Under the Agency Agreements, Minden is the "sole and exclusive agent and representative with respect to the Licensing of any and all uses" of the photographs. That is, the photographers have promised that Minden, and only Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs. That the photographers have retained some limited degree of authority to grant licenses themselves does not eliminate Minden's interest in the

copyright as the sole entity to act as the photographers' licensing agent.

795 F.3d at 1004; *see also Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 402–03 (D.N.J. 2020) (following *Minden*).

Here, too, the Plaintiffs reserved ownership of their copyrights and some limited rights to exploit their photos on their own, so long as those uses did not compete with the exclusive rights granted to Imagn. *Minden* teaches that the Contributor Agreements in the present case validly conveyed exclusive rights to Imagn and, therefore, Imagn has standing to sue.

The remaining question is whether it is *only* Imagn that has standing to sue, and the answer is yes. Plaintiffs will argue that, under 17 U.S.C. § 501(b), they are beneficial if not legal owners of the rights sued upon, and therefore have parallel authority to sue for infringement. The fatal deficiency in that argument is that in Section 7 of the Contributor Agreements, Plaintiffs contracted away whatever right they might have had to sue for infringement in any capacity. As the leading treatise summarizes the law, "[o]nce the copyright owner grants an exclusive license of particular rights, only the exclusive licensee, and not his grantor, may sue for later-occurring infringement of those rights." 3 Nimmer on Copyright § 12.02 (2021). *See also Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999) (unpublished) ("Where the assignment of an exclusive right under a copyright expressly includes the right to prosecute accrued claims for infringement, that right passes to the assignee. . . . It follows that the assignor would no longer have standing to prosecute such claims."); *United States Naval Inst. v. Charter Communs., Inc.*, 936 F.2d 692 (2d. Cir. 1991) (holding that a licensor of an exclusive license cannot sue for infringement of the licensed rights). Indeed, not only can the licensor not sue third parties, *it can be sued itself* by the exclusive licensee for continuing to exercise rights it granted to the licensee. *Essex Music, Inc. v. ABKCO Music & Records, Inc.*, 743 F. Supp. 237,

241-42 (S.D.N.Y. 1990) (rejecting defendant's claim that it cannot infringe its own copyright, where defendant had transferred the rights it later exercised).

The exception to this rule that the claimants invoke in their arbitration demand (*see* Demand ¶ 122) is that a purported grant of "nothing more than a bare right to sue" is unenforceable. *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 415 (2d Cir. 2018). As the Second Circuit explained in *John Wiley & Sons*, however, a transfer of the right to sue for copyright infringement *is* valid where it accompanies a grant of a substantive right of copyright. 882 F.3d at 399. Here, the transfer of the right to sue for copyright infringement is valid because in Section 1 of the Contributor Agreements each Plaintiff granted Imagn substantive rights of copyright, namely the "exclusive worldwide right to use, copy, perform, display, market, distribute, license, sub-license . . . all photographic images, digital files, video images or footage and all other photographic materials . . . ." These are core rights of copyright enumerated in 17 U.S.C. § 106. Plaintiffs did not merely convey to Imagn a "bare right to sue," and the plain language of Section 7 of the Contributor Agreements should be enforced as written. *See Stockfood*, 475 F. Supp. 3d at 404-05 (distinguishing *John Wiley & Sons*).

The Section 7 language allows photographers to pursue claims against infringers only if Imagn gives them written permission to do so or notifies them that Imagn refuses to take action. Both versions of Section 7 require some affirmative action by Imagn: "written permission" or "notification." Any such notification must be delivered "in person, by registered or certified mail, or overnight courier" to specified addressees (*e.g.*, Spurlock Contributor Agreement, Attachment 4 to Kleban Decl. Exh. 1, ¶ 11(c)). These clauses have an obvious purpose: to avoid duplicative litigation by the photographers and by Imagn. Plaintiffs did not allege in the Complaint that Imagn had granted them permission to sue or notified them that Imagn would not

take action.  To the contrary, it is evident that Imagn did pursue these issues with Reuters and Sipa, collected royalties where they were found to be due, and issued releases to resolve the matter.  By ignoring this limitation and filing a suit they had no right to file, the Plaintiffs are seeking to hold Defendants to double liability for their use of the photographs, to both the photographers and to Imagn.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS' THEORY OF USE BEYOND THE SCOPE OF THE LICENSE IS INCONSISTENT WITH THE CONTRIBUTOR AGREEMENTS THEY SIGNED

If Plaintiffs are deemed to have standing, the Complaint must still be dismissed because the theory of infringement is belied by the plain language of the Contributor Agreements.  The central allegation in the Complaint, offered on "information and belief," is that the Defendants were not authorized to distribute images "on an *a la carte* basis."  Compl. ¶ 44.  In their arbitration demand against Imagn, Plaintiffs elaborate and argue that the Contributor Agreements withhold from Imagn the ability to license a la carte usage (Demand ¶ 23).  That theory, however, is contrary to the plain wording of the Contributor Agreements and cannot support this action.

Here, the Contributor Agreements all grant plenary rights to "use, copy, perform, display, market, distribute, license, sub-license" the Plaintiffs' photographs (*e.g.*, Spurlock Contributor Agreement, Attachment 4 to Kleban Decl. Exh. 1, ¶¶ 1, 5).  While certain limited and non-competing uses are reserved by the grantor photographers, no other qualifications are stated. In the only place where several of the agreements mention a la carte usage, they do so in a way that makes clear that such uses are not only allowed but expected, by spelling out how Imagn is to account for such uses: "A la carte fees licensing fees [*sic*] and quarterly reports of Images or Stock Images shall be paid in addition to the assignment fees set forth above."  (*Id.* ¶ 6(b)(iii).)

-11-

The remaining agreements are equally broad in the grant of rights to Imagn but also explicit that no further payments to the photographers are required.[9]

A copyright license is a contract and governed by the normal rules of contract construction.  The Contributor Agreements each state: "This Agreement shall be governed by, and construed and interpreted in accordance with, the substantive laws of the State of New York, without regard to the conflicts of law principles thereof."  (*E.g.*, *id.* ¶ 11(b).)  Under New York law, the meaning of a contract that is clear and unambiguous on its face cannot be distorted by resort to extrinsic evidence; it must be construed as a matter of law by the court.  *E.g.*, *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990).  This issue is therefore appropriate for resolution on a Rule 12(b)(6) motion.

Plaintiffs appear to suggest in their Complaint that, even if Imagn had the right to engage in a la carte uses, Imagn may not have properly sub-licensed Defendants to engage in a la carte uses (Compl. ¶ 44).  But there are no factual allegations to support that speculative claim.  *See*, *e.g.*, *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 105 (2d Cir. 2019) (complaint insufficient where it merely identified "license limitations that *might* have been imposed and that *might* have been violated"), *cert. denied*, 140 S. Ct. 2670 (2020); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) (same).  While Plaintiffs will retort that they are not familiar with the sub-licenses granted by Imagn to the Defendants and require discovery, that is exactly the burden that Imagn and its sub-licensees were relieved of by Section 7, giving Imagn the sole right to police its business partners and resolve usage issues that arise between them.  Imagn's commercial position was made immeasurably more marketable to news agencies and distributors

---

[9] See footnotes 5 and 6 *supra.*

like the Defendants by the knowledge that the downstream parties would only have to engage

with Imagn, not a horde of individual photographers.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS HAVE FAILED TO IDENTIFY THE WORKS ALLEGED TO HAVE BEEN INFRINGED

The Complaint should also be dismissed because Plaintiffs fail to properly set forth the

acts of infringement about which they complain.  Exhibits 3-13 of the Complaint list copyright

registration certificates filed on behalf of Plaintiffs for tens of thousands of photographs, most of

them group registrations that say nothing more than, for example, "Group registration of

published photographs. 744 photographs. 2020-02-01 to 2020-02-22."  (Compl. Exh. 3, second

entry.)  But in pleading the works alleged to be infringed, the Complaint annexes only a handful

of examples for each Plaintiff, alleging them to be "not exhaustive and . . . attached merely for

illustrative purposes."  (Compl. ¶ 39 & Exhs. 1-2.)  This pleading is insufficient, as it does not

provide the Defendants with fair notice of the scope of the case.  In this area of the law, "[b]road,

sweeping allegations of infringement do not comply with Rule 8."  *Kelly v. L.L. Cool J.*, 145

F.R.D. 32, 36 n.3 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *Cole v. John Wiley & Sons,*

*Inc.*, No. 11-cv-2090, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012).  While Plaintiffs

contend that only Defendants know which photos they have used, that argument is belied by the

contents of Exhibits 1 and 2 of the Complaint, in which Plaintiffs have compiled alleged

infringing uses from readily-accessible public websites operated by various Defendants.

The failure to identify the alleged infringements presents a particularly acute problem in

this case.  As Plaintiffs are well aware, the Defendants are not interlopers who have committed

bald acts of infringement without any basis to believe they were authorized to make use of the

Plaintiffs' photographs.  On the contrary, they all hold licenses, directly or indirectly, from

Imagn, and if necessary, will plead a license defense to the present claims demonstrating the lack

of merit of the claims of infringement.  However, Defendants cannot reasonably be asked to

mount their defense without knowing the publications and uses alleged to infringe, since the

license defense will require that Defendants demonstrate that the alleged infringing uses are

covered by the particular license grant.  As such, Plaintiffs should be required to properly plead

their claims, including identification of the alleged infringements, so that Defendants are

provided with the requisite fair notice of the scope of the case.

**IV.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY
JUDGMENT BECAUSE PLAINTIFFS HAVE RELEASED DEFENDANTS**

Rule 56(a) requires grant of summary judgment where "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." "Summary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and

inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327

(1986).  The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion" and mustering the materials that demonstrate the

absence of a genuine issue of material fact.  *Id.* at 323. That is a simple matter here. Even if the

Plaintiffs had standing to sue and properly pleaded their Complaint, they cannot prevail because,

acting through their agent Imagn, Plaintiffs have already released each of the Defendants from

the liability they assert in this action.  This is therefore a case where a single issue is dispositive

and addressing it at the outset will save the Court and parties enormous time and expense.

The Releases are clear and unequivocal.  As to Reuters,

> Conditioned upon and in consideration of its receipt of the
> Settlement Payment, receipt of which is hereby acknowledged, as
> well as Reuters' agreement to make the undertakings listed in
> Section 2.3, Imagn, on behalf of itself and the Imagn Entities ***and,
> to the full extent permitted by the Photographer Agreements, on
> behalf of and in the name of the Photographers***, and except to the

> extent expressly set forth herein, hereby releases and forever discharges the Reuters Released Parties from, and covenants not to sue the Reuters Released Parties for, any and all Claims arising prior to the Effective Date that have been or could have been made by the Imagn Entities *or by the Photographers* against the Reuters Released Parties arising out of or related to the alleged unauthorized use, production, reproduction, distribution, display, sale, sub-license, or other exploitation of or infringement of copyrights in and to the Images, including the Photographers' Claims and all claims asserted in the Lawsuit.

(Kleban Decl., Attachment 16 to Exh. 1, § 2.1, emphasis supplied).  This Release also applies to Defendant Adobe, a sub-licensee of Reuters, which is a defined "Reuters Released Party" and named third-party beneficiary of the settlement agreement (*id.* §§ 1.5, 1.6).  Imagn's release of Defendant Sipa is identical in substance (Kleban Decl., Attachment 17 to Exh. 1).

Like the Contributor Agreements, the Settlement Agreements and Releases between Imagn and the Defendants are contracts, governed by New York law (*id.* § 16), and ought to be construed and enforced according to their terms.  As the Plaintiffs' arbitration demand against Imagn confirms, the Contributor Agreements were in force when Imagn exercised its rights thereunder and issued the Releases to Defendants, and remain in effect today.

There can be no genuine issue of disputed fact that Section 7 of the Contributor Agreements conferred actual and apparent authority on Imagn to release the Defendants.  "Under common law agency principles, a principal will be bound by the contracts executed by his agent with actual or apparent authority."  *UBS AG, Stamford Branch v. HealthSouth Corp.*, 645 F. Supp. 2d 135, 144 (S.D.N.Y. 2008) (citing *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 64 (2d Cir. 2006)).  More particularly, as the Restatement of Agency provides, "a third party's payment to or settlement of accounts with an agent discharges the third party's liability to the principal if the agent acts within actual or apparent authority in accepting the payment or settlement."

Restatement 3d of Agency § 6.07(2).  If the settlements were somehow improvident, which Defendants deny, that is an issue between the photographers and their agent Imagn.

"Summary judgment is appropriate if the terms of the contract are unambiguous."  *Knight MPIC Ventures, LLC v. Higginson*, No. 18-cv-8126, 2020 WL 550654, at *3 (S.D.N.Y. Feb. 4, 2020) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). The Court should, therefore, grant summary judgment dismissing this action as to the defendants on grounds of release.  While summary judgment ordinarily is addressed after completion of discovery, here the Releases are unambiguous and dispositive.  They should be given effect here and now in the interest of judicial economy and to spare the parties the burden of expensive and time-consuming discovery on all manner of issues that need never be reached.  *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006) (party may convert motion to dismiss to motion for summary judgment where the issues are "'discrete and dispositive' and therefore ripe for summary judgment").[10]

## V.   ALTERNATIVELY, THE COURT SHOULD STAY THIS ACTION TO AWAIT THE RESULT OF PLAINTIFFS' ARBITRATION AGAINST DEFENDANTS' LICENSOR

Defendants submit that this action is subject to immediate dismissal without leave to replead:  The Contributor Agreements and Releases are operative, their language is dispositive, and the result of the dispute between the photographers and Imagn cannot change that.  If, however, the Court does not believe that the action should be dismissed forthwith, it should stay

---

[10] As explained in Defendants' pre-motion letter (ECF 48), Defendants respectfully request that this alternative motion for summary judgment be considered without prejudice to a later summary judgment motion, if the Court for any reason finds that there are potential issues of disputed fact requiring discovery before such a motion can be addressed.

this action to await the result of the Arbitration because it may render litigation of this case unnecessary.

The Second Circuit has recognized that district courts may stay a case pursuant to "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75–76 (2d Cir. 1997) (*quoting Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co*., 339 F.2d 440, 441 (2d Cir. 1964)). District courts regularly exercise their discretion and grant stays where "[a stay] promote[s] judicial economy" and prevents "confusion and possible inconsistent results." *E.g.*, *Invista S.À R.L. v. E.I. du Pont de Nemours & Co*., No. 08-cv-7270, 2010 WL 11712412, at *6 (S.D.N.Y. Mar. 31, 2010) (citing *Birmingham Assocs. Ltd. v. Abbott Labs*., 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008)) (stay warranted until the resolution of an arbitration between the plaintiff and a co-defendant in part because "it is clear that [plaintiff's] claims in this litigation involve facts and issues that are inextricably linked to the . . . Arbitration").

Even where, as here, non-arbitrating defendants have moved to stay an action pending the outcome of an arbitration, "courts have granted stays where 'the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against [the] non-arbitrating defendant.'" *BSG Res. (Guinea) Ltd. v. Soros*, No. 17-cv-2726, 2017 WL 5897450, at *4 (S.D.N.Y. Nov. 29, 2017) (quoting *Hikers Indus., Inc*.,  640 F. Supp. at 178); *see also Moore v. Interacciones Global, Inc*., No. 94-cv-4789, 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) (claims appropriately stayed "when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-

arbitrating defendants"); *Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92-cv-2236, 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992) ("Courts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources.").

Here, Defendants assert that the Contributor Agreements and Releases are clear and unambiguous on their face, and that their validity does not turn on whether Imagn may have breached some duty to the Plaintiffs.  If Defendants are correct, this action should be dismissed forthwith.  If the Court disagrees and determines that grounds for immediate dismissal are not present, it should stay the action because the Arbitration may address and decide issues potentially dispositive of this action.  For example, the Arbitration claimants are seeking an award declaring that Section 7 of the Contributor Agreements is invalid and unenforceable (Demand ¶¶ 119-42, Kleban Decl. Exh. 1).  If the arbitrator denies that request and finds the grant to Imagn of the exclusive right to sue valid, then Plaintiffs here will be collaterally estopped from relitigating that issue.  Likewise, the Arbitration claimants are seeking an arbitral declaration that the Releases that Imagn issued to Defendants are invalid and unenforceable (*id.*).  If the arbitrator denies that request and finds the Releases valid, then Plaintiffs here will be collaterally estopped from relitigating that issue.  *See Commonwealth Ins. Co. v. Thomas A. Greene & Company, Inc.*, 709 F. Supp. 86, 88 (S.D.N.Y. 1989) ("Collateral estoppel applies as well to arbitration awards as to judicial adjudications, and thus may bar the relitigation of an issue decided at an arbitration.") (citations omitted); *see also Benjamin v. Traffic Executive Assoc. Eastern Railroads*, 869 F.2d 107, 114 (2d Cir. 1989).

Further, Plaintiffs seek an award against Imagn for the *same* infringements of the *same* works on which they predicate this action.  If they prevail in arbitration and Imagn satisfies the

monetary award, there will be nothing left to litigate because Plaintiffs cannot obtain more than a single satisfaction against joint infringers.  *See* 4 Nimmer on Copyright § 14.04 (2021) (Where there are two or more people held jointly and severally liable for one or more infringements, "[e]ven if they are sued in separate actions, satisfaction of the judgment in the first action should constitute a defense to the second and succeeding actions.").

Fairness and efficiency both dictate this result, if the Court does not immediately dismiss this action for the reasons stated above.  While the validity of the Contributor Agreements and Releases should not turn on private disputes between the photographers and Imagn, if the validity of those agreements did depend on disputed facts concerning the relationship of Imagn and the Plaintiffs, those facts are readily available to Imagn and the Plaintiffs, but far less so to the Defendants.  Resolution of any such issues that this Court deems material to the claims in this action should occur in a proceeding in which Imagn is a party.

## CONCLUSION

The Court should grant the motion to dismiss and/or for summary judgment.  If the Court were to conclude that this action is not amenable to immediate dismissal, it should stay this action to await the result in the Arbitration between Plaintiffs and Imagn.

Dated: May 10, 2021
New York, New York

PATTERSON BELKNAP WEBB & TYLER LLP

By:     */s/ Robert P. LoBue*
Robert P. LoBue
David S. Kleban
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
rplobue@pbwt.com
dkleban@pbwt.com

*Counsel for Defendant Thomson Reuters America Corporation*

MILLER KORZENIK SOMMERS RAYMAN LLP

By:     */s/ David Korzenik*
David Korzenik
Terence Keegan
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
Telephone: (212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com

*Counsel for Defendant Sipa Press Inc.*

VENABLE LLP

By:     */s/ Meaghan H. Kent*
Meaghan H. Kent (*pro hac vice*)
William C. Lawrence
600 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 344-4000
mhkent@venable.com
wclawrence@venable.com

*Counsel for Defendant Adobe Inc.*