# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN SPURLOCK; STEVEN MITCHELL; ADAM HUNGER; THOMAS RUSSO; GREG COOPER; STEWART MILNE; NOAH MURRAY; IAN RUTHERFORD; STEVEN FLYNN; JAMES E. BROWN; and MARK ZEROF, | No. 1:20-cv-09135-JPC |
| *Plaintiffs*, | |
| v. | ECF CASE<br>Electronically Filed |
| THOMSON REUTERS AMERICA CORPORATION; ADOBE INC.; SIPA PRESS, INC.; MAINSTREAM DATE, INC. d/b/a NEWSOM; TT NEWS AGENCY; NTB SCANPIX; SCANPIX BALTICS; SCANPIX DENMARK; PRESSE SPORTS; IMAGEGLOBE d/b/a BELGA IMAGES; REAL TIME IMAGES and JOHN DOE COMPANIES 1-10, | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE FOR
SUMMARY JUDGMENT, OR TO STAY PENDING ARBITRATION**

Kevin P. McCulloch (KM0530)
Nate A. Kleinman (NK3168)
McCulloch Kleinman Law
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     APPLICABLE LEGAL STANDARDS AND ALLOCATION OF
       BURDENS. ........................................................................................................ 2

II.    RULE 12(D) REQUIRES THE COURT TO EXCLUDE ALL
       EXTRINSIC     DOCUMENTS     AND     FACTS     FROM
       CONSIDERATION. .......................................................................................... 3

       A.     The Court Must Exclude Defendants' Argument That
              Plaintiffs Did Not Satisfy Any Alleged Conditions To
              Bring Suit. .......................................................................................... 4

       B.     The Court Must Exclude The Purported Settlement
              Agreements Or Permit Discovery Before Considering
              Any Motion For Summary Judgment. ............................................... 6

III.   PLAINTIFFS HAVE FULL STANDING TO ENFORCE THEIR
       COPYRIGHTS. .................................................................................................. 9

       A.     Plaintiffs Have Standing As Either The Legal Or
              Beneficial Owners Of Copyright. ...................................................... 9

       B.     Defendants Fail To Show Section 7 Of The Imagn
              Contracts Even Applies. .................................................................. 11

       C.     Requiring Permission to Sue Would Be Futile and
              Contrary to Law. .............................................................................. 12

IV.    THE RELEASES DEFENDANTS CLAIM TO HAVE OBTAINED
       FROM PLAINTIFFS' PURPORTED AGENT ARE INVALID AND
       UNENFORCEABLE. ....................................................................................... 13

       A.     Any Purported Release Is Invalid Because Transferring
              The "Bare Right to Sue" Is Contrary To The Copyright
              Act. ................................................................................................... 14

       B.     The Releases Violate Principles Of Property Law
              Expressed In *Davis*. ........................................................................ 17

C.     The Releases Violate Principles Of Agency And
       Equitable Trust.................................................................................................. 18

V.     PLAINTIFFS ADEQUATELY PLEAD THEIR INFRINGEMENT
       CLAIMS. .................................................................................................... 19

       A.     License Is An Affirmative Defense And Defendants Fail
              To Show That Any Of Their Uses Of Plaintiffs' Images
              Were Licensed. ...................................................................................... 19

       B.     Plaintiffs Did Not Fail To Identify Their Copyrighted
              Works................................................................................................. 22

VI.    THE COURT SHOULD NOT CONSIDER A STAY WITHOUT
       RESOLVING THE THRESHOLD ISSUES PRESENTED ON
       DEFENDANTS' MOTION. ............................................................................ 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

### CASES

*A. Brod, Inc. v. SK & I Co.*, 998 F. Supp. 314 (S.D.N.Y. 1998) .................................................. 18

*ABKCO Music, Inc. v. Harrisongs Music Ltd.*, 944 F.2d 971 (2d Cir. 1991) ....................................................................................................................... 14, 16

*Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436 (S.D.N.Y. 2014) ........................................................................................................ 7

*Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369 (S.D.N.Y. 2010) ........................................................................... 6

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ......................................... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 2

*Assoc. Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) ...................................................................................................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 2, 22

*Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770 (S.D.N.Y. 1985) ....................................................................................... 19

*Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295 (S.D.N.Y. 2008) ...................................................................................................... 25

*Bourne v. Walt Disney Co.* 68 F.3d 621 (2d Cir. 1995) ........................................... 20, 21

*Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988) ............................................ 3

*Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007 (S.D.N.Y. 1992) ........................................................................................................ 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................. 4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .................................... 3, 6

*Cole v. John Wiley & Sons, Inc.*, No. 11 Civ. 2090(DF), 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ......................................................................... 24

*Cole v. Macklowe*, 953 N.Y.S.2d 21 (1st Dept. 2012) ................................................. 12

*Cortner v. Israel*, 732 F.2d 267 (2d Cir. 1984) ...................................................... 11, 18

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ........................................................ 9, 17, 18

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982) ......................................................................................................... 9, 14

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d
 268 (2d Cir. 1944) .......................................................................................... 11

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332
 (S.D.N.Y. 2015) ............................................................................................... 23

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375
 F.3d 168 (2d Cir. 2004)..................................................................................... 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991)
 ......................................................................................................................... 20

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ............................. 3, 22

*Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002) ..................................... 16

*Genger v. Genger*, 993 N.Y.S.2d 297 (2014) ................................................ 19

*Gomez v. Toledo*, 446 U.S. 635 (1980)............................................................ 5

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir.
 2000) ............................................................................................................. 7, 8

*Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791
 (S.D.N.Y. 2020) ............................................................................................... 9

*HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377 (7th Cir. 2011)...................................... 15, 16

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 481 F. Supp. 2d
 253 (S.D.N.Y. 2007)......................................................................................... 5

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
 146 F.3d 66 (2d Cir. 1998)............................................................................... 7

*John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394 (2d Cir. 2018)
 ................................................................................................................. 5, 10, 15

*John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262
 (S.D.N.Y. 2014) ......................................................................................... 14, 15

*Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204 (S.D.N.Y.
 2000) ............................................................................................................... 13

*Manning v. Miller Music Corp.*, 174 F. Supp. 192 (S.D.N.Y. 1959) ........................................ 19

*Matter of Friedman*, 407 N.Y.S.2d 999 (2d Dept. 1978) ............................. 13

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ......................................... 3

*Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131
 (E.D.N.Y. 2019)............................................................................................... 5

*Miller v. Wolpoff & Abramson*, LLP, 321 F.3d 292 (2d Cir. 2003) ................................ 7

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) ....................................................................................................... 10

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) ..................................... 6

*Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18-CV-9369 (NSR), 2020 WL 85469 (S.D.N.Y. Jan. 6, 2020) ..................................... 24

*Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103 (S.D.N.Y. 2012) ......................................................................................................... 16

*Random House, Inc. v. Rosetta Books LLC*, 150 F. Supp. 2d 613 (S.D.N.Y. 2001) ................................................................................. 13

*Reape v. New York News, Inc.*, 504 N.Y.S.2d 469 (2d Dept. 1986) ............................. 13

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ............................................................ 3

*Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091 (2d Cir. 1993) ................................................................................ 13, 16

*Schisgall v. Fairchild Publ'ns*, 137 N.Y.S.2d 312 (Sup. Ct. N.Y. Cty. 1955) ....................................................................................... 19

*Sea Tow Servs Int'l, Inc. v. Pontin*, 607 F. Supp. 2d 378 (S.D.N.Y. 2009) ......................................................................................................... 12

*Silberman v. Innovation Luggage, Inc.,* No. 01 Civ. 7109(GEL), 2003 WL 1787123 (S.D.N.Y. Apr. 3, 2003) ..................................... 10

*Spinelli v. Nat'l Football League*, 903 F.3d 185 (2d Cir. 2018) ........................... *passim*

*Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*, 522 N.Y.S.2d 292 (3d Dept. 1987) ............................................................. 12

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) .................................................................................... 8

*Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610 (S.D.N.Y. 2013) ......................................................................................................... 24

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) .......................................................... 3

*Yamashita v. Scholastic Inc.*, 936 F.3d 98 (2d Cir. 2019) .................................... 20, 21

**STATUTES**

17 U.S.C. § 410(c) ......................................................................................................... 9

17 U.S.C. § 501(b) ............................................................................................... 9, 14, 16

**OTHER AUTHORITIES**

1-12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright
    § 12.09[A][3] (2010) ........................................................................................ 2

H.R. Rep. No. 94-1476 (1976) .................................................................................. 10

Restatement (Third) of Agency § 8.06(2) .................................................................. 9

**RULES**

Fed. R. Civ. P. 12(d) ................................................................................................... 3

Fed. R. Civ. P. 56(a) ................................................................................................... 3

N.Y. Rules of Prof. Conduct 1.8(g) ........................................................................... 9

N.Y. Rules of Prof. Conduct 1.8(h) ........................................................................... 9

Plaintiffs, by and through undersigned counsel, hereby submit this memorandum of law in opposition to the Motion to Dismiss and in the Alternative for Summary Judgment, or to Stay Pending Arbitration (Dkt. No. 55 ("Motion")) filed jointly by Defendants Thomson Reuters America Corporation ("Reuters"); Sipa Press, Inc. ("Sipa"); and Adobe Inc. ("Adobe") (collectively, "Defendants").

## PRELIMINARY STATEMENT

Plaintiffs are freelance photographers who make their living by taking and licensing their news and sports-related photographs, primarily through Imagn Content Services, LLC ("Imagn"). (Compl. ¶¶ 3, 29.)  Plaintiffs have no agreements or licenses with Defendants and neither Imagn nor Defendants have ever provided Plaintiffs a copy of any alleged license agreements to Defendants, despite Plaintiffs repeated pre-suit requests.  Plaintiffs thus allege in this action that Defendants made unauthorized, unlicensed, and infringing uses of their copyrighted photographs by displaying and selling their photos on and through their respective websites.  (*Id*. ¶¶ 35, 44-45.)

Defendants' Motion claims to raise "threshold issue[s]" and asks the Court to dismiss the case "because the Plaintiffs lack standing and alternatively for summary judgment because their claims against Defendants have already been settled and released by Imagn, the true party with standing to bring such claims."  (Memo. at 2.)  However, undeterred by the four corners of the Complaint, Defendants argue in support of their Motion that they are "business partners" and "licensees of Imagn" that "contracted directly, or indirectly, with Imagn to utilize the body of photography controlled by Imagn," "paid Imagn handsomely for those rights" (*id*. at 2-3) and did so based on the "knowledge that [they] would only have to engage with Imagn, not a horde of individual photographers."  (*Id*. at 13.)  None of those facts are alleged in the Complaint or supported by any evidence.  Such extrinsic claims cannot be accepted as fact at this stage of the case, particularly because they contradict Plaintiffs' express allegations in the Complaint.

1

In any case, Defendants' Motion is easily rejected.  The argument that Plaintiffs lack standing despite expressly retaining ownership of their copyrights and having registered those copyrights with the Copyright Office is contrary by Section 501 of the Copyright Act and settled law; and the purported releases from Imagn are repugnant to federal law and public policy and cannot be given judicial imprimatur.  The only "audacious ploy" (Memo. at 2) here is Defendants' and Imagn's secret and illegal effort to cover up their misconduct by attempting to strip Plaintiffs of their express rights under the Copyright Act as the sole owners of all copyrights in the photos at issue, which the contracts explicitly and repeatedly recognize they are.

## ARGUMENT

## I.   APPLICABLE LEGAL STANDARDS AND ALLOCATION OF BURDENS.

Defendants ostensibly move the Court for dismissal pursuant to Rule 12(b)(6), but recognizing that their Motion relies almost entirely on extrinsic documents and facts beyond the pleadings, they alternatively seek summary judgment pursuant to Rule 56(a).  With respect to the argument for dismissal, Defendants fail to demonstrate that Plaintiffs' pleadings are not facially plausible.  And Defendants' argument for summary judgment without any opportunity for discovery on the plethora of disputed facts they attempt to bring before the Court is baseless.

Plaintiffs are not required to prove their case in the pleadings, but rather must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Thus, to the extent Defendants move pursuant to Rule 12(b)(6), the governing standard for resolving the Motion is "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This is a low threshold that requires only that Plaintiffs merely "nudge[] [their] claims . . . across the line from conceivable to plausible." *Id.* at 678, 680.  Copyright claims are adequately stated where the allegations "raise a reasonable expectation that discovery" will reveal evidence of infringement.  1-12 NIMMER ON COPYRIGHT § 12.09[A][3] (2010).

2

Defendants bear the burden on this Motion, and the Court "must accept as true all of the factual allegations set out in [Plaintiffs'] complaint, draw inferences from those allegations in the light most favorable to [Plaintiffs], and construe the complaint liberally."  *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).  Plaintiffs are "entitled to *all* reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the [asserted] defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (emphasis added).  This liberal standard of construction reflects that the Court's role at this stage "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 176 (2d Cir. 2004).

Under Rule 56(a), summary judgment may be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In assessing a Rule 56 motion, "[a]ll ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought."  *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *see also Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) ("[I]f . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment.").

## II.   RULE 12(d) REQUIRES THE COURT TO EXCLUDE ALL EXTRINSIC DOCUMENTS AND FACTS FROM CONSIDERATION.

Rule 12(d) precludes consideration of extra-pleading materials on a motion to dismiss and dictates that courts "must" exclude extrinsic evidence from consideration or convert the motion to one for summary judgment and allow discovery.  Fed. R. Civ. P. 12(d).  This requirement is "strictly enforced" and must be applied here because Defendants' Motion relies heavily on extra-pleading materials.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).

If the Court converts/construes Defendants' Motion as one for summary judgment, the Court must allow Plaintiffs "a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Given that Defendants' Motion relies on purported agreements that have not been authenticated here and were negotiated in secret with a non-party and the details of the negotiations have not been disclosed, and Defendants *still* have not provided the Court with any documents showing that they ever did or do have a *valid* license, all of the core issues of fact remain in dispute and entertaining a summary judgment motion at this stage without allowing any discovery would be premature.

### A. The Court Must Exclude Defendants' Argument That Plaintiffs Did Not Satisfy Any Alleged Conditions To Bring Suit.

A core tenet of Defendants' Motion is that after "learn[ing] of complaints" from Plaintiffs, "Defendants investigated and entered into negotiations with Imagn to resolve these issues and believed they had done so. Reuters made an additional payment to Imagn for some licensed uses that remained outstanding, while Sipa demonstrated to Imagn's satisfaction that all uses had been properly accounted for." (Memo at 6-7.) None of these facts are alleged in the Complaint, and Defendants offer no evidence of any such investigation or additional payments to Imagn, nor any supposed license covering whatever "uses" they uncovered. These claims are unsupported and extrinsic, and yet Defendants ask the Court to accept them as true in dismissing this action or granting summary judgment without any opportunity for discovery. Defendants' position is contrary to both the mandate of Rule 12(d) that extrinsic claims be excluded and Rule 56(a) that courts must permit an opportunity for discovery before resolving disputed issues on a motion for summary judgment. Defendants offer no serious grounds for the Court to ignore these dictates.

Similarly, relying on Section 7 of the Contributor Agreements, Defendants also assert that Plaintiffs lack standing because they "did not allege in the Complaint that Imagn had granted them

permission to sue or notified them that Imagn would not take action."  (Memo. at 10-11.)  But Plaintiffs are not required to plead facts in response to potential affirmative defenses in their complaint.  *See In re Sept. 11 Prop. Damage & Bus. Loss Litig*., 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007) (citing *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)).  Defendants' argument that Section 7 applies also conspicuously ignores the express language in that section providing that any obligations – even if valid – arise only where the infringer "lawfully obtained" the photos from Imagn, which requires a showing of a valid license.[1]  (Kleban Decl. Ex. 1, Att. 3 (the "2011 Agreement") at § 7.)  Both Defendants' standing and release arguments hinge on a showing that Section 7 *both* is valid and applies here, but Plaintiffs expressly plead that Defendants lack a valid license (Compl. ¶ 44) and Defendants make no effort to provide the Court with any evidence to the contrary.  Instead, Defendants just beg the question and *assert* that they are valid licensees.[2]

Rule 12(d) precludes the Court from accepting Defendants' (unsupported) representations contradicting allegations in the Complaint and *assume* that Defendants have a valid license and thus Section 7 applies here.  *See Michael Grecco Prods., Inc. v. Alamy, Inc*., 372 F. Supp. 3d 131, 135 (E.D.N.Y. 2019) (denying motion to dismiss because "the Court would need to credit facts asserted by Defendant that are directly contradicted by the complaint").  This entire argument – not to mention whether the obligation was satisfied by Plaintiffs or excused/waived by Imagn[3] –

---

[1] With respect to Plaintiffs Flynn, Murray, and Rutherford who signed new contracts with Imagn in 2020 (Kleban Decl. Ex. 1, Att. 7, 10, and 12 (the "2020 Agreement")), the 2011 Agreements still control for all claims that accrued under their old contracts.  *See John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 399 (2d Cir. 2018).

[2] Even now, Defendants merely claim that they "will demonstrate" down the road at some point "that they were duly licensed by Imagn to distribute and sub-distribute the Plaintiffs' works, and paid Imagn handsomely for those rights," but only "[i]f required to do so in this litigation." (Memo at 2.)  Even if Defendants later make a showing that they "lawfully obtained" Plaintiffs' photographs from Imagn, their own unclean hands must preclude any claim that Plaintiffs were obliged to comply with Section 7.  *See Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc*., 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992) ("A party's failure to act in good faith so as to facilitate the occurrence of a condition precedent requires the condition to be deemed satisfied or excused").

[3] Absent a showing of a valid license to Defendants, Plaintiffs had no obligation to just accept that Section 7 applied because that showing is a threshold condition that must be satisfied to trigger any obligations thereunder, and by refusing to make that showing, Imagn waived any right it may have had to pursue the claims itself.  *See Am. Int'l*

5

plainly raises issues of fact beyond the pleadings that cannot be resolved on this Motion.[4]  (*Id.*)

Also without any citation to record evidence – because *there is none* – Defendants blithely state that "it is evident that Imagn did pursue these issues with Reuters and Sipa, collected royalties where they were found to be due, and issued releases to resolve the matter."  (Memo. at 11.)  Such claims indisputably are beyond the pleadings and disputed and cannot be accepted at face value.[5] Further, the purported releases occurred *many months after* Plaintiffs filed this lawsuit, and thus cannot support dismissal on standing grounds.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed"); *Chambers*, 282 F.3d at 155 (consideration of extrinsic materials was error and court "failed to consider plaintiffs' beneficial ownership claim under the Copyright Act").

### B. The Court Must Exclude The Purported Settlement Agreements Or Permit Discovery Before Considering Any Motion For Summary Judgment.

Defendants assert that summary judgment is appropriate because Plaintiffs, "acting through their agent Imagn, . . . already released each of the Defendants from the liability they assert in this action."  (Memo. at 14.)  This argument crucially ignores that these purported settlements were not referenced or relied upon in the Complaint, nor could they have been because they were negotiated in secret many months after Plaintiffs filed suit and without their involvement.  In fact,

---

*Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) ("A party has waived a contractual right when it voluntarily and intentionally abandons the enforcement of that right" and "[w]aiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage.").

[4] Excluding these arguments and permitting discovery before considering any motion for summary judgment is particularly necessary here because Defendants also conveniently fail to advise the Court that, prior to bringing this action, Plaintiffs *repeatedly* requested that Imagn and Defendants make such a showing and provide copies of a valid license to Defendants.  (Kleinman Decl. ¶¶ 3-6.)  Defendants refused those requests and instructed Imagn also to refuse based on alleged confidentiality concerns. (*Id.*)  The refusal to provide copies of alleged license agreements involving Plaintiffs' works is confounding given that they supposedly are direct and intended beneficiaries of these alleged license agreements, not to mention that instructing Imagn to withhold such agreements from Plaintiffs is directly contrary to Defendants' current claim that they understood Imagn to be acting as Plaintiffs' agent.

[5] Defendants offer no evidence and Plaintiffs *dispute* that Imagn made an effort to "find" the appropriate royalties that were due or that *any* settlement funds were paid to Plaintiffs.

Defendants concede that Plaintiffs learned of these purported settlements from Defendants' counsel during the pre-motion conference.  (Memo at 7.)  Under Rules 12(d) and 56(a), the Court *must* either exclude these secretly negotiated, post-litigation agreements or permit Plaintiffs the opportunity to take discovery prior to considering a motion for summary judgment.  *See Miller v. Wolpoff & Abramson*, LLP, 321 F.3d 292, 303 (2d Cir. 2003) ("summary judgment should only be granted if '*after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof'") (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)) (emphasis in original).

Discovery is necessary for many reasons.  ***First***, Plaintiffs were not involved in any alleged "investigation" of these claims by Imagn or any settlement negotiations with Defendants and were not even notified that these activities were taking place until *months after* filing suit.  Defendants cite no case law supporting summary judgment under such circumstances.  ***Second***, a dispute of material fact exists as to whether Section 7 applies because Defendants have never shown that they "lawfully obtained" Plaintiffs' photographs pursuant to a valid license, which is a precondition to Imagn's asserting any authority to act on Plaintiffs' behalf.  (2011 Agreement § 7.)  Material disputes also exist as to whether this contract provision is invalid under law or due to prior material breaches by Imagn and/or whether Imagn improperly assumed any alleged authority to settle these claims in this case.[6]  (*See* Kleinman Decl. Ex. 2.)  ***Third***, the Settlement Agreements reference other agreements between Defendants and Imagn, one of which apparently was amended in

---

[6] Defendants improperly ask the Court not only to take judicial notice of the Settlement Agreements but also to accept the truth and validity of the documents, and yet conversely argue the Court must ignore Plaintiffs' pleadings and claims brought in that same filing.  They cannot have it both ways.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted but rather to establish the fact of such litigation and related filings."); *Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 442 (S.D.N.Y. 2014) (on motion to dismiss, "it is inappropriate to discredit the factual allegations of a complaint merely because they are contradicted by assertions made in judicially noticeable documents").

June 2020, just weeks after Plaintiffs' counsel contacted Imagn.  (*See* Kleban Decl. Ex. 1, Att. 16 at 1.)  Plaintiffs have not been provided copies of these agreements, and the Court has no basis for presuming these agreements included valid licenses to Defendants.[7]  **Fourth**, Defendants claim Imagn acted as Plaintiffs' agent in releasing their claims but Imagn *rejects Defendants' position* and maintains in arbitration that it is *not* Plaintiffs' agent and has no duty to take their interests into account in settling claims.[8]  (Kleinman Decl. Ex. 1 ("Imagn Arb. Answer") at 14-15.)

Plaintiffs must be afforded discovery to address these and the many other disputed issues which go to the very heart of Defendants' arguments for summary judgment.  *See Hellstrom*, 201 F.3d at 94 ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *Trebor Sportswear Co. v. The Ltd. Stores, Inc*., 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment" and "must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.").

Even beyond the dictates of Rule 56(a), discovery is essential here because Defendants ask the Court to accept as valid Settlement Agreements in which Imagn purported to exercise authority to aggregate *all* claims of *all* of its current and former contributors in granting a class-wide release to Defendants, without any effort to obtain their informed consent.[9]  This raises serious questions about the validity of the agreements. If Imagn acted as Plaintiffs' agent, the Court must scrutinize

---

[7] It would be invalid if Defendants and Imagn attempted to "retroactively" license away Plaintiffs' accrued infringement claims in this 2020 amendment.  *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 198 (2d Cir. 2018).

[8] A material dispute also exists as to whether Defendants could even rely on Imagn's apparent authority to act as Plaintiffs' agent given that Defendants' own conduct belies such a claim, including their counsel insisting that Imagn could not even provide Plaintiffs with copies of any supposed license agreements issued to them by Imagn. (Kleinman Decl. ¶ 6.)  If Defendants sincerely believed that Imagn was acting as Plaintiffs' agent, then their counsel could not in good faith have maintained that Imagn could not act as an ordinary fiduciary and share copies of agreements with its principals who were direct and intended beneficiaries of those agreements.

[9] The Settlement Agreements aggregate the claims of all "Photographers," grouping together the claims of "all of Imagn's counterparties to the Photographer Agreements, including but not limited to [Plaintiffs]." (Kleban Decl. Ex. 1, Att. 16 at § 1.1.)

such agreement to ensure it acted "with utmost good faith and the most scrupulous inherent fairness" in negotiating these class-based settlements.[10]  *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 804 (S.D.N.Y. 2020); Restatement (Third) of Agency § 8.06(2).

## III.   PLAINTIFFS HAVE FULL STANDING TO ENFORCE THEIR COPYRIGHTS.

### A.  Plaintiffs Have Standing As Either The Legal Or Beneficial Owners Of Copyright.

Under the Copyright Act, only "the legal or beneficial owner of an exclusive right is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b); *see also Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982) (same), *superseded by rule on other grounds*; *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) ("The right to prosecute an accrued cause of action for infringement is also an incident of copyright ownership.").  Plaintiffs' contracts with Imagn expressly provide that they "retain[ed] the copyright to the Images" and "shall at all times be the sole and exclusive owner of the Images."  (*See* 2011 Agreement ¶ 1 *and* 2020 Agreement ¶ 1; 2011 Agreement ¶ 3(a).)  Plaintiffs registered their copyrights with the Copyright Office (*see* Compl. Exs. 3-13), and the registration certificates constitute *prima facie* evidence of the validity of Plaintiffs' ownership of these copyrights.  17 U.S.C. § 410(c).

Ignoring these plain facts, Defendants argue that Plaintiffs' copyright ownership is effectively meaningless because "the Contributor Agreements . . . validly conveyed exclusive rights to Imagn and therefore, Imagn has standing to sue." (Memo. at 9.)  However, even assuming *arguendo* that were true, as a matter of law it still would not preclude Plaintiffs' standing to bring infringement claims as either the legal or "beneficial owner" of rights.  *See DRK Photo*, 882 F.3d

---

[10] Defendants claim Imagn held itself out as an agent and settled claims on an aggregated basis for multiple principals, affecting the interests of parties who are not in privity with one another.  If so, it failed to provide each principal notice or the opportunity to seek legal advice beforehand, which appears to violate the rules of professional conduct.  *See* N.Y. Rules of Prof. Conduct 1.8(g) and 1.8(h).

at 414 (noting the "paradigmatic—and only—example of an approved 'beneficial owner' suit is set forth in the legislative history of the Copyright Act . . . [as ']an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees'") (quoting H.R. Rep. No. 94-1476, at 159 (1976)); *Silberman v. Innovation Luggage, Inc.,* No. 01 Civ. 7109(GEL), 2003 WL 1787123, at *7, n. 5 (S.D.N.Y. Apr. 3, 2003) (same). Even the (non-binding) case cited by Defendants and upon which they rely heavily, *Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997 (9th Cir. 2015), held that the photographers' standing was not relinquished under such contractual arrangements, but rather that "*both* [the agency] and the photographers" have standing to sue. 795 F.3d at 1005. Defendants' reliance on the general rule that a copyright owner relinquishes the right to sue after granting an exclusive license ignores the "beneficial owner" aspect of Section 501(b), which was included in the Copyright Act specifically for circumstances such as these, when an author conveys rights in exchange for royalty payments. *See DRK Photo*, 882 F.3d at 414.

Defendants are mistaken that only Imagn has standing under the contracts because Plaintiffs supposedly "contracted away whatever right they might have had to sue for infringement in any capacity." (Memo. at 9.) Under the plain language of Section 7, Plaintiffs *reserved* the right to sue Imagn's customers in the event that Imagn declined to do so itself, and that provision applied only to Imagn's "lawful" customers. Thus, the very provision on which Defendants rely contemplates Plaintiffs having statutory standing to sue. As in *Minden*[11], although Plaintiffs granted Imagn broad rights to act as their licensing agency, they retained benefits and rights under

---

[11] Defendants ignore that the photographers in *Minden* also had purportedly "contracted away" the authority to sue through express assignment agreements, and the relevant contributor agreements in that case also provided that Minden would be "the 'sole and exclusive agent and representative with respect to the Licensing of any and all uses' of the photographs." 795 F.3d 997 at 1000, 1005. Yet the Ninth Circuit still held that *both* the agency and the photographers would have standing to pursue infringement claims. *Id*.

the agreement making them (at the very least) beneficial owners of such rights, including: (i) Plaintiffs retaining copyright ownership of their photos (2011 & 2020 Agreement § 1); (ii) Plaintiffs retaining rights to display and license their works (*id*. §§ 1, 2); (iii) requiring Imagn to pay specified royalties as a condition of its license (2011 Agreement § 6(b)) and a share of any commercial sales (*id*.; 2020 Agreement § 6(e)); and (iv) Plaintiffs retaining rights to pursue claims subject to limited restrictions, (*id*. § 7).   That such rights were not licensed back to Plaintiffs by Imagn but rather "reserved" and "retained" by Plaintiffs dispels any notion that Plaintiffs assigned exclusive ownership of those rights to Imagn.   These substantial rights and benefits also leave no question that Plaintiffs retained at least an equitable interest in and to the works.[12]   *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright."); *accord Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268, 269 (2d Cir. 1944).

## B.   Defendants Fail To Show Section 7 Of The Imagn Contracts Even Applies.

Section 7 of the 2011 Agreement is expressly limited to instances of "unauthorized use by any customer who *lawfully* obtained Images *from Agency*" (emphasis added).   Recognizing this strict limitation, Defendants assert – without any evidence – that "Plaintiffs are well aware" that Defendants "all hold licenses, directly or indirectly, from Imagn" and "are not interlopers who have committed bald acts of infringement [.]"   (Memo at 13.)   On the contrary, Plaintiffs are not "well aware" of these purported facts and expressly plead that Defendants did not "lawfully" obtain their photographs. (*E.g.*, Compl. ¶ 44.)   Defendants have only themselves to blame for Plaintiffs

---

[12]  If Plaintiffs did "contract away" their right to sue, such an arrangement shows that Imagn could exercise Plaintiffs' § 501 rights only as their agent and not because Imagn owned the exclusive right to sue for infringement. But again, Imagn disclaims any authority/obligation to act as Plaintiffs' agent and thus this is a material dispute that demands the Court permit discovery before considering further.

lacking evidence to confirm such claims because, again, they refused multiple pre-suit requests from Plaintiffs to produce evidence of their purported license.  (Kleinman Decl. ¶ 6.)  And except for Reuters and Sipa, Defendants admit that they did not obtain Plaintiffs' photographs "from [the] Agency" and instead have no "direct" license from Imagn.  (Memo at 2, 3.)  Section 7 thus cannot apply and Imagn had no authority to release claims against parties three and four steps removed from being "lawful" customers.  The Court cannot read the words "directly *or indirectly*" into the contracts as doing so would render superfluous the very language intended to limit that provision.

In light of such material disputes, the Court must accept Plaintiffs' pleadings and exclude Defendants' arguments to the contrary, or it must permit discovery before considering summary judgment.  As shown in the Complaint, Plaintiffs have located thousands of instances of Defendants using and publishing their photos but they had never received any payments related to these uses and thus reasonably believed (and do allege) that the uses by Defendants were *unlawful* and *not* covered by a valid license.  Defendants' Motion fails to show otherwise.

### C.  Requiring Permission to Sue Would Be Futile and Contrary to Law.

Section 7 also cannot be read to apply here because requiring Plaintiffs to obtain "permission" to pursue claims from the same entity that Plaintiffs allege is responsible for or involved in the misconduct would be futile and contrary to New York law.  *Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*, 135 A.D.2d 891, 892, 522 N.Y.S.2d 292, 293 (3d Dept. 1987) ("where it becomes clear that one party will not live up to a contract, the aggrieved party is relieved from the performance of futile acts or conditions precedent"); *Sea Tow Servs Int'l, Inc. v. Pontin*, 607 F. Supp. 2d 378, 389 (S.D.N.Y. 2009) (noting that "adherence to the cure provision of a contract is not required where it would be a futile act."); *Cole v. Macklowe*, 99 A.D.3d 595, 596, 953 N.Y.S.2d 21 (1st Dept. 2012) ("a contract should not be interpreted to produce an absurd result, one that is commercially unreasonable, or one that is contrary to the intent of the parties").

It could not possibly have been the intent of the parties that Imagn would have "sole discretion" to block Plaintiffs' investigation of Imagn's own misconduct or release claims against itself.

Any reading of the contracts that would allow Imagn to simply withhold its approval to pursue claims indefinitely – potentially until the relevant statute of limitations had expired – or that required permission to pursue claims against itself, despite Plaintiffs retaining copyright ownership and "reserv[ing] the right" to pursue claims, would be an unreasonable interpretation of the contracts and effectively nullify Plaintiffs' copyrights. *See Random House, Inc. v. Rosetta Books LLC*, 150 F. Supp. 2d 613, 618 (S.D.N.Y. 2001) ("The court must consider the entire contract and reconcile all parts, if possible, to avoid an inconsistency."); *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (court must "safeguard against adopting an interpretation that would render any individual provision superfluous"); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 229 (S.D.N.Y. 2000) ("[B]asic principles of contract interpretation militate against the adoption of an interpretation that would render any portion of the contract language a nullity."). The Court should reject such an interpretation even if technically consistent with the language of Section 7. *Reape v. New York News, Inc.*, 122 A.D.2d 29, 30, 504 N.Y.S.2d 469 (2d Dept. 1986) (courts must reject "a literal reading of the disputed provision" where "such an interpretation would defeat and contravene the purpose of the agreement."); *Matter of Friedman*, 64 A.D.2d 70, 82, 407 N.Y.S.2d 999 (2d Dept. 1978) (noting that "an interpretation that produces an absurdly harsh result is to be avoided").

## IV.   THE RELEASES DEFENDANTS CLAIM TO HAVE OBTAINED FROM PLAINTIFFS' PURPORTED AGENT ARE INVALID AND UNENFORCEABLE.

Defendants' argument for summary judgment based on a sham release purportedly given by Imagn is baseless. The provision of the contracts Defendants cite is contrary to federal law, and even if it were valid, its application here cannot possibly have been the intent of the parties

13

and is precluded by fundamental rules of agency and property law.

### A. Any Purported Release Is Invalid Because Transferring The "Bare Right to Sue" Is Contrary To The Copyright Act.

As discussed *supra* Part II, the Court cannot consider the Settlement Agreements as they are beyond the pleadings and implicate material issues of fact related to any alleged "investigation" that occurred and the subsequent negotiations and settlement payments made by Defendants to Imagn. However, even if the Court could consider these Agreements, they should be rejected because the relevant contractual provision cited is contrary to law.

Section 7 of the 2011 Agreement purports to "grant[] Agency full and complete authority to make claims or to institute proceedings in Photographer's name to prosecute such unauthorized use." The 2020 Agreement includes a similar provision. (*See* Memo. at 6.) However, this Court has made clear that a contract purporting to grant a third-party the "right to sue" on behalf of a copyright owner, without also transferring *exclusive ownership* of such rights, is invalid as a matter of law because the Copyright Act permits only copyright owners and exclusive licensees to pursue claims involving infringement of their own rights. *See* 17 U.S.C. § 501(b); *ABKCO Music, Inc. v. Harrisongs Music Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("The Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.") (citing *Eden Toys,* 697 F.2d at 32 n. 3); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 280 (S.D.N.Y. 2014) (collecting cases), *aff'd*, 882 F.3d 394 (2d Cir. 2018).

Defendants assert that Section 7 is valid and does not purport to convey a "bare right to sue" because the contracts also include "a grant of a substantive right of copyright" (Memo. at 10) – whatever that vague phrase means – which is sufficient to confer standing. Not so. A grant of "substantive right of copyright" – which is true of any license – is not sufficient to confer standing if it is only an incomplete transfer, no matter how substantive or broad. As the case law cited by

Defendants actually holds, there must be a grant of *exclusive ownership* of such rights to be valid and confer standing. *DRK Photo*, 882 F.3d at 399. Nor does the fact that the word "exclusive" is used in some instances in the contracts make it an "exclusive license" or transfer of ownership or legal title, as required for purposes of conferring standing to bring claims under the Copyright Act. *See DRK Photo*, 998 F. Supp. 2d at 280 ("When determining whether an agreement confers standing, courts look to 'the substance of the agreement, not the labels it uses.'") (quoting *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 383 (7th Cir. 2011)).

Here, the Imagn contracts repeatedly state that Plaintiffs, *not* Imagn, "retain the copyright to the Images" (2011 & 2020 Agreement § 1) and "shall at all times be the sole and exclusive owner of the Images" (2011 Agreement § 3(a)). Such language contradicts Defendants' reading and would be superfluous if the contracts involved a complete transfer of exclusive ownership to Imagn. And again, that such rights were not licensed back to Plaintiffs by Imagn but rather "reserved" and "retained" by Plaintiffs dispels any notion that Plaintiffs assigned exclusive ownership of those rights to Imagn. This is further evidenced by the fact that Imagn needed to release claims "in the name of" or "on behalf of" the Plaintiffs, as the Settlement Agreements purport to do. Plaintiffs also "reserve[d] the right" to pursue claims of infringement against Imagn's customers if it chose not to and the contracts expressly limit Imagn's authority to claims involving its lawful customers rather than all infringements, both of which are dispositive that the contracts did not transfer exclusive ownership of Plaintiffs' Section 501 rights to Imagn.

Imagn cannot partially own the exclusive right to bring suit but only in certain circumstances, as Defendants suggest. Thus, the only reasonable interpretation of the contracts is that the parties agreed that Imagn would be the *sole agency* permitted to license and distribute the images submitted to it during the term of the contract, not that submission of images would transfer

*exclusive ownership* rights to Imagn.  If Defendants' reading were correct, several provisions of the contracts would be rendered superfluous, including Section 7 itself given that the right to pursue infringement claims would be part and parcel of any transfer of exclusive rights.  And Plaintiffs cannot "retain the copyright" in their images, but also relinquish all of the associated exclusive rights under the Copyright Act to another entity, otherwise there would be nothing to "retain."  Such absurd interpretation of the contracts must be avoided.  *See Sayers*, 7 F.3d at 1095.

Although Imagn's license may be broad, it is not "exclusive" for purposes of conferring standing under the Copyright Act. *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 114 (S.D.N.Y. 2012) (holding license agreement not exclusive because "although the agreements purported to grant [an] 'exclusive license to distribute' the images, the parties agreed that the images 'shall at all times be and remain the exclusive property' of the Plaintiffs, and that Plaintiffs 'retain [] copyright" in the images'"); *HyperQuest*, 632 F.3d at 384-85 (finding no exclusivity where licensee "received broad rights to reproduce, distribute, and create derivative works, but [licensor] retained a wide array of rights").

Even assuming *arguendo* that the contracts did convey exclusive ownership to Imagn, Section 7 still would be invalid because an exclusive licensee can only sue to enforce its own rights, not on behalf of or "in the name" of another exclusive owner, and particularly not against that owner's objections.  *See* 17 U.S.C. § 501(b) ("legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right while he or she is the owner of it"); *ABKCO Music*, 944 F.2d at 980 ("The Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."); *accord Gardner v. Nike, Inc.*, 279 F.3d 774, 779 (9th Cir. 2002) ("an exclusive licensee . . . has the right to sue for infringement of the assigned right *in his own name*") (emphasis added).  Imagn cannot as a matter

16

of law institute or settle claims "in Photographer's name" under Section 501(b).

**B.  The Releases Violate Principles Of Property Law Expressed In *Davis*.**

In *Davis v. Blige*, an alleged infringer solicited and obtained a "retroactive assignment" of a co-owner's copyright interest in an attempt to escape liability after the other co-owner already had filed suit.  The Second Circuit strongly rejected such tactics under principles of property law, discussing the "legal mischief" that can result when parties with joint ownership interests attempt to usurp and prejudice the accrued rights of other owners:

> A settlement agreement can only waive or extinguish claims held by a settling owner; it can have no effect on co-owners who are not parties to the settlement agreement.  It is a venerable principle of New York co-tenancy law, for example, that 'one tenant in common can settle for or release his interest in . . . personal property, but he cannot settle for or release the interest of his co-tenants.' . . . Settlement agreements are not to be used as a device by which A and B, the parties to the decree, can (just because a judge is willing to give the parties' deal a judicial imprimatur) take away the legal rights of C, a nonparty.

*Davis*, 505 F.3d at 102-03 (internal quotations and cites omitted).  The concern in *Davis* was that "[a]n infringer could 'buy' his way out of an infringement suit" by going to the party "willing to settle for a lower price than the co-owner bringing the action," and thus that settlement "is likely to cost much less than the value of the copyright interest including the cost of litigation. The result is that infringement is encouraged and rewarded."  *Id.* at 106.  Given the inequities of such an outcome, *Davis* held a release by one co-owner that would effectively release an accrued claim held by the other co-owner was invalid.  *Id*. at 104.  The same principles and reasoning apply here.

The claims Imagn attempted to release were not exclusively owned by it, either because Plaintiffs' contracts did not transfer ownership of exclusive rights to Imagn or because Plaintiffs retained an interest in such rights.  As the authors and creators of the photos at issue, Plaintiffs unquestionably hold an equitable ownership interest, if not full legal title, in and to their claims against Defendants.  If such a release were to be given legal effect, it would destroy Plaintiffs'

ownership interest under Section 501 and conflict with the Second Circuit's holding in *Davis*. 505

F.3d at 104 ("An owner who wishes to release unilaterally his own accrued claims may do so using

whatever language he chooses . . . but such an agreement cannot have the effect of eviscerating a

co-owner's claims based on past copyright infringement, nor can it settle accrued claims held by

co-owners who are not themselves parties to the agreement.").  By attempting to release Plaintiffs'

claims to limit its *own* liability, Imagn prejudiced Plaintiffs' rights in a manner *worse* than in

*Davis*.  This same type of ploy was rejected in *Spinelli*, a case involving a licensing agency that,

like Imagn, purported to release accrued claims held by its contributors.  *See* 903 F.3d at 198.

### C.  The Releases Violate Principles Of Agency And Equitable Trust.

Even assuming *arguendo* that Section 7 of the Imagn contracts is valid and Imagn had

authority to release claims of infringement on Plaintiffs' behalf, doing so under these

circumstances undeniably would violate the "equitable trust relationship" at the heart of the

contracts and should be invalidated as a matter of law and public policy.  If, as Defendants contend,

Plaintiffs transferred exclusive rights to Imagn as well as the discretionary authority to pursue

claims on their behalf, they did so based on the understanding that Imagn would market and license

the images in a mutually-beneficial manner and to generate income.  In other words, Plaintiffs

entrusted Imagn with their property and understood that Imagn would not act in a manner contrary

to their interests.  The Second Circuit has held that "[w]hen a composer assigns copyright title to

a publisher in exchange for the payment of royalties, an equitable trust relationship is established."

*Cortner*, 732 F.2d at 271.  Under New York law, even if there is no express trust agreement, a

"constructive trust" arises where there is "(1) a confidential or fiduciary relationship; (2) an express

or implied promise; (3) a transfer made in reliance on that promise; (4) and unjust enrichment."

*A. Brod, Inc. v. SK & I Co*., 998 F. Supp. 314, 327 (S.D.N.Y. 1998).  "New York law is clear that

a fiduciary relationship exists from the assumption of control and responsibility . . . and is founded

18

upon trust reposed by one party in the integrity and fidelity of another." *Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985).

Here, Plaintiffs entrusted Imagn with the licensing of their photos and ostensibly granted it authority to pursue claims and obtain settlements on their behalf, believing that its interests would be aligned with theirs. Indeed, Defendants expressly argue that Imagn acted as Plaintiffs' agent and it represented and warranted in the release that it was acting "on behalf of and in the name of the Photographers" (2011 Agreement § 2.1 and 2020 Agreement, § 2.1). But if Imagn was acting as Plaintiffs' agent – which Imagn denies (Imagn Arb. Answer at 14-15) – there can be no question that it breached its equitable and fiduciary duties to Plaintiffs as its principals by purporting to strip them of their claims without notice, against their interests, and in a transparent attempt to limit Imagn's own liability to Defendants. Such blatantly self-dealing transactions are invalid and voidable by the agent's principal. *Genger v. Genger*, 120 A.D.3d 1102, 1104, 993 N.Y.S.2d 297, 299 (2014) (holding fiduciary's failing to disclose to its principal renders "the transaction is voidable at the option of the principal" because "an agent cannot bind his principal . . . where he is known to be acting for himself, or to have an adverse interest"). By attempting to release Plaintiffs' claims against Defendants to limit its own liability, Imagn unjustly enriched itself at the expense of Plaintiffs and violated its implied fiduciary and equitable trust duties under New York law. *See Schisgall v. Fairchild Publ'ns*, 207 Misc. 224, 137 N.Y.S.2d 312 (Sup. Ct. N.Y. Cty. 1955); *Manning v. Miller Music Corp.*, 174 F. Supp. 192, 196 (S.D.N.Y. 1959).

## V.   PLAINTIFFS ADEQUATELY PLEAD THEIR INFRINGEMENT CLAIMS.

### A.   License Is An Affirmative Defense And Defendants Fail To Show That Any Of Their Uses Of Plaintiffs' Images Were Licensed.

Defendants argue that Plaintiffs' claims must be dismissed because "the theory of infringement is belied by the plain language of the Contributor Agreements." (Memo. at 11.) This

argument misconstrues Plaintiffs' allegations and Defendants fail to show that any of their uses of Plaintiffs' images were authorized, as required to satisfy the affirmative defense of license.

To state a plausible claim of infringement, a complaint must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Plaintiffs allege, *inter alia*, that they own copyrights in and to their respective photographs and that "Defendants copied, published, displayed, and distributed Plaintiffs' copyrighted photos for purposes of selling *a la carte* licenses without first obtaining a valid license or permission from Plaintiffs or Imagn." (Compl. ¶¶ 45, 64.)  In response, Defendants do not dispute that they copied and distributed Plaintiffs' images, but instead argue that they were authorized to do so, pointing to Plaintiffs' contributor agreements *with Imagn*. Defendants assert that such agreements "grant plenary rights" to Imagn to use and license the images, including through *a la carte* sales.[13]  (*See* Memo. at 11.) However, Defendants are not parties to Plaintiffs' contributor agreements and those agreements grant no rights to Defendants. Simply because Imagn could have sublicensed Plaintiffs' images to Defendants for further sublicensing does not mean that it did, or did so validly. Indeed, Plaintiffs expressly allege that Imagn did not grant such rights to Defendants. (Compl. ¶¶ 44-45, 64-65.)

Defendants ask the Court to presume they have a license, but license is an affirmative defense "that the alleged infringer must plead and prove." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (citing *Bourne v. Walt Disney Co*. 68 F.3d 621, 630-31 (2d Cir. 1995)); *see*

---

[13] Defendants' citation to an allegation made in Plaintiffs' arbitration demand against Imagn is both misplaced and misconstrued. Plaintiffs do not allege in the arbitration that "the Contributor Agreements withhold from Imagn the ability to license a la carte usage" (Memo. at 11) as Defendants assert here, but rather that, because of Imagn's own royalty payment and reporting obligations to Plaintiffs in connection with any *a la carte* or commercial sales, the contracts preclude Imagn from authorizing any "editorial subscription based customers" – which are excluded from such payment/reporting obligations – from selling *a la carte* licenses without the same obligations. In any event, the allegations made in an entirely separate proceeding cannot form the basis of Defendants' argument under Rule 12 that the pleadings here are insufficient to state a claim against Defendants.

*also Spinelli*, 903 F.3d at 199 ("Because the existence of a license is an affirmative defense . . . it is a permissible basis for dismissal only 'where the facts necessary to establish the defense are evident on the face of the complaint'").  Although the Second Circuit has clarified that "when the *existence* of a license is not in question, a copyright holder must plausibly allege that the defendant exceeded particular terms of the license," *Yamashita*, 936 F.3d at 105 (emphasis in original) – a holding which Defendants cite and rely heavily on here – the existence of a license to Defendants expressly *is in question*.  (*See* Compl. ¶ 45 ("Defendants have purported to sublicense Plaintiffs' photos to other entities without the proper authority or a license from Plaintiffs"); *id.* ¶ 64 ("Defendants copied, published, displayed, and distributed Plaintiffs' copyrighted photos . . . without first obtaining a valid license or permission from Plaintiffs or Imagn.").)  Plaintiffs' allegations are plausible given that they only became aware of Defendants' activities in March 2020, despite Defendants offering "many thousands" of Plaintiffs' photos for sale dating back several years.  (*Id.* ¶¶ 35, 36, Exs. 1 & 2.)[14]

If, contrary to Plaintiffs' allegations, Defendants did have a license to copy, display, distribute, and sell Plaintiffs' images, it is their burden to come forward with it.  *See Bourne*, 68 F.3d at 631 ("Since . . . evidence of a license is readily available to the alleged licensee, it is sensible to place upon that party the burden of coming forward with evidence of a license."); *Assoc. Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 561 (S.D.N.Y. 2013) (same).  Yet Defendants fail to meet this burden, relying instead on Plaintiffs' agreements with Imagn and the conclusory and unsupported assertion that "Reuters and Sipa are licensees of Imagn, and Adobe is

---

[14] If the Court can take judicial notice of the allegations made in Plaintiffs' arbitration demand – as Defendants contend it should (Memo. at 3, n. 4) – there is further support for Plaintiffs' allegations that Defendants lacked a valid license, including Defendants' refusing pre-suit to provide documentation of a license despite multiple requests, failing to report or pay royalties on sales for many years, and Adobe's conflicting representations that it was not a party to any license agreement with Imagn, but that it had received the photos from Reuters and had previously been notified that the "agreement" between Reuters and Imagn had terminated but Plaintiffs' images inadvertently remained displayed and offered for sale on Adobe's stock photo website (*see* Arb. Demand ¶¶ 39-42).

a sub-licensee of Reuters." (Memo. at 3.)  Despite producing purported settlement agreements with Imagn and seeking summary judgment based thereon, Defendants conspicuously failed to produce any purported license agreements with Imagn in support of their Motion.  Because Plaintiffs explicitly dispute *both* the existence and validity of a license to Defendants – contrary to the plaintiff in *Yamashita* – the Court cannot accept Defendants' unsupported claim in a legal brief that they are "licensees of Imagn."  *See Spinelli*, 903 F.3d at 199; *Friedl*, 210 F.3d at 83  (finding error where court "relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss") (citation omitted).

### B.  Plaintiffs Did Not Fail To Identify Their Copyrighted Works.

Defendants also argue for dismissal because, according to them, "Plaintiffs fail to properly set forth the acts of infringement about which they complain" and the Complaint and exhibits thereto "do[] not provide the Defendants with fair notice of the scope of the case." (Memo. at 13.) Defendants' argument attempts to impose a heightened pleading standard and should be rejected.

As discussed *supra*, Part I.A, the only question at this stage of the case is whether the Complaint includes "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Here, Plaintiffs attached numerous examples of their images being displayed and offered for sale on Defendants' respective websites (*see* Compl. Exs. 1, 2) as well as charts identifying all of their respective copyright registrations (*id*. Exs. 3-13).  Plaintiffs allege, upon information and belief, that all of the photos covered under their respective registrations were "copied, displayed, sold and/or offered for sale by Defendants through their respective online platforms." (*Id*. ¶ 62.)  Defendants complain that most of the registrations are "group registrations" that do not identify the individual photos covered thereunder.  (Memo. at 13.)  However, Defendants also concede that such registrations cover "tens of thousands of photographs," thus suggesting that Plaintiffs were required to attach copies of the 100,000+ photos covered by their

registrations and which they allege were infringed by Defendants in order to provide "fair notice" of the claims. Such a requirement is contrary to the liberal pleading standard required by Rule 8, particularly when Defendants are in sole possession of the full scope of their uses of Plaintiffs' photos and when it would be impracticable for Plaintiffs to individually identify the tens of thousands of photos at issue. *See Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015) (denying motion to dismiss where plaintiff listed "registrations covering over 700 works and allege that these are the subject of the copyright claim" and finding "it would be impracticable to require Plaintiffs" to allege which specific works were infringed when "Defendants are in the sole possession of the facts that determine whether any individual work was infringed.") (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

Defendants argue that they are not in "sole possession" of facts regarding which photos they have used given the screen captures Plaintiffs included in Exhibits 1 and 2 of the Complaint, which Defendants characterize as having been compiled from "readily-accessible public websites operated by various Defendants." (Memo. at 13.) However, as shown in the Exhibits, Defendants' websites are not "readily-accessible"; indeed, several Defendants' websites require a customer account to view "all available content" (*e.g.*, Ex. 1 at 1 (screen capture showing search results on Reuters Pictures, stating "Be sure to Sign in to see all available content.")) and/or are not searchable by the photographer's name, but only by time-period or subject matter (*see id*. at 14 (screen capture of Adobe Stock page showing Plaintiff Cooper's image through a search for "2015 patriots")). Defendants – as the owners and operators of their respective websites and all content available thereon – should easily be able to determine which photos they have offered for sale belonging to Plaintiffs, which they already committed to do as a "condition" of their release from Imagn (Kleinman Decl. ¶ 17). There is no question that they are on "fair notice" of the claims

against them.  Indeed, Defendants represent on this Motion that they "investigated and entered into negotiations with Imagn to resolve these issues and believed they had done so."  (Memo. at 6.) Defendants fail to explain how they were able to fully "investigate" and resolve Plaintiffs' claims and commit to reporting all uses to Imagn but now have insufficient notice of the same information.

Additionally, although Defendants reference one particular registration in support of their argument that the photos are not sufficiently identified, the other registrations provide sufficient notice of the photos covered, including by identifying the particular events, date, and photographer.[15]  (*E.g.,.*)  Claims related to such photos cannot be dismissed simply because other photos are not sufficiently identified.  *See Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18-CV-9369 (NSR), 2020 WL 85469, at *3 (S.D.N.Y. Jan. 6, 2020); *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 618 (S.D.N.Y. 2013).

At the very least, the Court should allow Plaintiffs the opportunity to replead in order to include more specific information identifying all of the photos at issue.  *See Cole v. John Wiley & Sons, Inc.,* No. 11 Civ. 2090(DF), 2012 WL 3133520, at *7 (S.D.N.Y. Aug. 1, 2012).

## VI.   THE COURT SHOULD NOT CONSIDER A STAY WITHOUT RESOLVING THE THRESHOLD ISSUES PRESENTED ON DEFENDANTS' MOTION.

Lastly, Defendants argue that, if the Court does not dismiss Plaintiffs' claims, "it should stay this action to await the result of the Arbitration because it may render litigation of this case unnecessary."  (Memo. at 16-17.)  However, as discussed herein, discovery will need to be taken

---

[15] For example, Compl. Ex. 4, Row 8 shows Plaintiff Spurlock's registration VA 2-219-314 which covers "2020 Indy 500 and Kentucky Derby . . . 2020-08-18 to 2020-09-05" and Compl. Ex. 5, Row 1 shows Plaintiff Mitchell's registration VA 2-208-542 which covers "NBA: Knicks vs. Heat Feb. 27, 2014."  Other registrations even identify specific work titles.  (*See* Compl. Ex. 4, Row 6 (Mitchell's registration VA 2-154-434, covering single photo titled "Miami Hurricanes tight end David Njoku (86) dives into the end zone for a touchdown. (2016-11-05)".)  Because Plaintiffs take many photos at each sporting event they cover, they generally do not create individual titles for each photo, but rather group them by event and/or date.  Defendants offer no logical reason to require copyright owners to list the file names of every work included in a group registration if all are at issue.  Plaintiffs stand ready and willing to produce copies of all their photos but size constraints preclude filing thousands of photos via ECF

24

of Defendants to address material issues of fact related to their use of Plaintiffs' photos and the purported settlement of claims, regardless of whether such discovery is taken in this action or the arbitration. Entering a blanket stay now, without first resolving the threshold issues presented on Defendants' Motion, thus will not promote efficiency or preserve resources. Moreover, the initial phase of the arbitration will be focused on the issue of class certification, not the issues presented on this Motion or the merits of claims here, so staying these claims would cause significant delay of relevant discovery and prejudice to Plaintiffs. A stay as this juncture also is unnecessary because the Court can resolve these standing and release arguments under federal law and would not defer to an arbitration ruling on these questions in any case. Moreover, a crucial element of Plaintiffs' claims in the arbitration is the lack of effective tracking systems in place by Imagn and its partners. Given that Defendants have made no indication that they will cease their use, distribution, and sale of Plaintiffs' photos, such delay will seriously prejudice Plaintiffs by further unauthorized distribution where there is no effective means of tracking uses in place to assure that monetary damages will be available and complete if Plaintiffs prevail. Defendants also fail to show that a stay "will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party." *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008). For a stay to be entered, Defendants must commit to participating in discovery and not hindering the arbitration and be enjoined from further use/sale of Plaintiffs' images during any stay.

## CONCLUSION

For the forgoing reasons, Defendants' Motion should be DENIED.

Dated:  June 4, 2021
New York, New York.

Respectfully submitted,

McCulloch Kleinman Law


By:     _____
        Nate A. Kleinman (NK3168)
        501 Fifth Avenue, Suite 1809
        New York, New York 10017
        T: (212) 355-6050
        F: (206) 219-6358

        *Counsel for Plaintiffs*