IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN SPURLOCK; STEVEN MITCHELL; ADAM HUNGER; THOMAS RUSSO; GREG COOPER; STEWART MILNE; NOAH MURRAY; IAN RUTHERFORD; STEVEN FLYNN; JAMES E. BROWN; and MARK ZEROF,<br><br>                    *Plaintiffs,*<br><br>         v.<br><br>THOMSON REUTERS AMERICA CORPORATION; ADOBE INC.; SIPA PRESS, INC.; MAINSTREAM DATA, INC. d/b/a NEWSCOM; TT NEWS AGENCY; NTB SCANPIX; SCANPIX BALTICS; SCANPIX DENMARK; PRESSE SPORTS; IMAGEGLOBE d/b/a BELGA IMAGE; REAL TIME IMAGES; and JOHN DOE COMPANIES 1-10,<br><br>                    *Defendants.* | No. 20-cv-09135-JPC<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, OR TO STAY PENDING ARBITRATION**

PATTERSON BELKNAP WEBB & TYLER LLP
Robert P. LoBue
David S. Kleban

*Counsel for Defendant Thomson Reuters America Corporation*

MILLER KORZENIK SOMMERS RAYMAN LLP
David Korzenik
Terence Keegan

*Counsel for Defendant Sipa Press Inc.*

VENABLE LLP
Meaghan H. Kent (*pro hac vice*)
William C. Lawrence

*Counsel for Defendant Adobe Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .........................................................................................................................1

I. PLAINTIFFS LACK STANDING ..............................................................................1

    A. The Photographer Agreements Validly Convey Exclusive Substantive Rights to Imagn, Together with the Exclusive Right to Sue for Their Infringement ....................................................................1

    B. Section 7 Bars the Claims in This Case ................................................2

II. THE RELEASES EXTINGUISHED THE CLAIMS AT ISSUE ......................................5

III. PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED INFRINGEMENT ..................................................................................................8

IV. ALTERNATIVELY, A STAY SHOULD BE GRANTED ...............................................10

CONCLUSION ......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cole v. John Wiley & Sons, Inc.*,
    2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ................................................................... 9

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
    697 F.2d 27 (2d Cir. 1982) ............................................................................................. 2

*Energy Intelligence Grp., Inc. v. Jefferies, LLC*,
    101 F. Supp. 3d 332 (S.D.N.Y. 2015) ............................................................................ 9

*Essex Music, Inc. v. ABKCO Music & Records, Inc.*,
    743 F. Supp. 237 (S.D.N.Y. 1990) ................................................................................. 5

*Genger v. Genger*,
    120 A.D.3d 1102 (1st Dep't 2014) ............................................................................ 6, 7

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998) ........................................................................................... 7

*John Wiley & Sons, Inc. v. DRK Photo*,
    882 F.3d 394 (2d Cir. 2018) ........................................................................................ 2, 3

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F. Supp. 2d 262 (S.D.N.Y. 2014) ............................................................................ 2

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y.1992) ....................................................................................... 9

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    795 F.3d 997 (9th Cir. 2015) ..................................................................................... 1, 2

*N. Shipping Funds I, LLC v. Icon Cap. Corp.*,
    921 F. Supp. 2d 94 (S.D.N.Y. 2013) .............................................................................. 6

*Napster, LLC v. Rounder Recs. Corp.*,
    761 F. Supp. 2d 200 (S.D.N.Y. 2011) ............................................................................ 5

*Psihoyos v. Pearson Educ., Inc.*,
    855 F. Supp. 2d 103 (S.D.N.Y. 2012) ............................................................................ 2

*Rogers v. HSN Direct Joint Venture*,
    1998 WL 566804 (S.D.N.Y. Sept. 4, 1998) ................................................................... 6

## TABLE OF AUTHORITIES *(continued)*

**Page(s)**

*Yamashita v. Scholastic Inc.*,
  936 F.3d 98 (2d Cir. 2019) ................................................................................................. 3, 8, 9

**Statutes**

17 U.S.C. § 201(d)(2) ....................................................................................................................1

17 U.S.C. § 501(b) .........................................................................................................................1

**Other Authorities**

3 Nimmer on Copyright § 10.02[A] ..............................................................................................1

3 Nimmer on Copyright § 12.02 ....................................................................................................1

Fed. R. Civ. P. 9(c) ........................................................................................................................4

Through the Motion to Dismiss, Defendants ask the Court to enforce unambiguous contracts as written. Despite Plaintiffs' effort to generate questions of fact, (1) Plaintiffs contracted away standing to sue; (2) Defendants have been released; and (3) Plaintiffs have not pleaded their Complaint in accordance with Second Circuit law.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING

#### A. The Photographer Agreements Validly Convey Exclusive Substantive Rights to Imagn, Together with the Exclusive Right to Sue for Their Infringement

Plaintiffs claim that Section 7 of the Contributor Agreements—which transferred the "exclusive," "full" and "complete" right to sue for infringements of their photographs to Imagn—is unenforceable as granting a "bare right to sue."[1] (Pl. Opp. at 14.) Their argument reflects a misunderstanding of the law of copyright standing, which has undergone a sea change since the 1909 Copyright Act's doctrine of "indivisibility," under which only the owner of a copyright had standing to sue for infringement. That doctrine was abrogated by the current 1976 Act, which authorizes separate ownership of any of the exclusive rights that constitute the copyright, *or any sub-division of those rights*, 17 U.S.C. § 201(d)(2), and confers standing to sue on the exclusive holder of the specific right infringed. *Id.* § 501(b); *see generally* 3 Nimmer on Copyright §§ 10.02[A], 12.02. As a consequence, exclusive licensees—those who do not own the copyright but hold the exclusive right to exploit one or more specific rights under it—have standing to sue.

That is the lesson of, among many other decisions, *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015), which held that photographer contracts that granted the

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in Defendants' moving brief ("Def. Br.").

same exclusive rights to the publisher that Plaintiffs granted to Imagn conferred standing on the publisher. Plaintiffs argue that *Minden* is not binding because we are not in the Ninth Circuit, but *Minden* is consonant with Second Circuit law, which has long held that a transfer of the right to sue for infringement is effective when accompanied by a grant of exclusive substantive rights under the copyright—*i.e.*, any part of the enumerated rights under section 106 such as the right to reproduce or display. *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394 (2d Cir. 2018); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982). Plaintiffs rely on *dicta* in *Minden* suggesting that the photographers there also could have sued (Pl. Opp. at 10 n.11). However, neither the Court of Appeals nor the District Court in *Minden* considered whether the photographers had contracted away their right to sue, because the issue was not presented.

Here, as in *Minden*, the Plaintiffs granted to Imagn exclusive section 106 rights to exploit their copyrights. As *Minden* explains, the Act does not require a licensee to be the transferee of *all* rights of copyright to have standing; it is only necessary that the rights licensee *is* granted are granted exclusively, and that the suit concern infringement of *those* rights. 795 F.3d at 1004. Dispositively, it is the exclusive rights that the Plaintiffs granted to Imagn that Defendants stand accused of infringing by displaying Plaintiffs' photographs on their "online platforms." (Compl. ¶ 62.) This case is therefore unlike those relied on by Plaintiffs, in which the licensees held only *non*-exclusive rights. *See John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 278 (S.D.N.Y. 2014) ("[T]he Representation Agreements are nonexclusive licenses."), *aff'd*, 882 F.3d 394 (2d Cir. 2018); *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 114 (S.D.N.Y. 2012) (contract provided that "the relationship shall be non-exclusive").

**B.   Section 7 Bars the Claims in This Case**

Plaintiffs allege that they nonetheless have standing to sue because they are "beneficial owners" of the exclusive rights they transferred to Imagn. Even if Plaintiffs are beneficial

owners, they agreed in Section 7 of the Contributor Agreements that they would not sue for infringement except in limited circumstances not present here.[2] That is the deal Plaintiffs made in exchange for the benefits they received under their contracts, and one to which they should be held.

Plaintiffs say that Section 7 did not transfer the right to bring this action to Imagn because it is limited to claims against an infringer who "lawfully obtained" the images in question from Imagn. They suggest that must mean Imagn can only sue when images were used in accordance with the terms of "a valid license." (Pl. Opp. at 5, 11-12.) This makes no sense as a textual matter; how one *obtains* an image has nothing to do with how one then *uses* it. Moreover, Plaintiffs' reading would make the exclusive right to sue granted in Section 7 a nullity, given that use in accordance with a valid license is a complete defense to infringement. *See*, *e.g.*, *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019). As Plaintiffs recognize, the Court should avoid a construction that renders provisions meaningless. (Pl. Opp. at 10-11.)

Plaintiffs' own admissions establish that Defendants "lawfully obtained" the images at issue. Their Complaint admits that their images were distributed to the media by Imagn. (Compl. ¶ 31.)  In their Arbitration Demand, Plaintiffs repeatedly acknowledge that Defendants (who are referred to there as "Third-Party Resellers") were entitled to access the photos from Imagn. *E.g.*, Kleban Decl. Ex. 1 ¶ 45 (describing Third-Party Resellers as Imagn's "subscription customers"); *id.* ¶ 48 (describing them as "partners and subscription clients"); ¶ 93 (alleging that Imagn entered "subscription-based, direct feed, or full access arrangements with Third-Party Resellers

---

[2] Defendants do not concede that Plaintiffs are beneficial owners—that is, persons who have parted with legal title to their works in exchange for royalties. *See*, *e.g.*, *DRK Photo*, 882 F.3d at 414. For example, Plaintiffs do not receive royalties from use of the images by "subscription" clients. *See*, *e.g.*, Spurlock Agr. ¶ 6(a)(ii).

such as Reuters, Adobe, [and] Sipa"); *id.* ¶ 152 (alleging that "subscription-based customers . . . have access to entire photo archives [of Imagn] by paying a flat fee"). Furthermore, the Contributor Agreements provide that the only authorized channels of distribution were (1) through Imagn, and (2) through the very limited noncompeting uses permitted to Plaintiffs, and Plaintiffs allege they have not made any transfers to Defendants (Compl. ¶¶ 32, 64), meaning that Defendants necessarily obtained the images from Imagn. This is evidenced by the exhibits annexed to the Complaint reflecting alleged displays of Plaintiffs' images by Defendants, as they credit USA Today Network (*i.e.*, Imagn) as their source:

> May 30, 2020; Indianapolis, IN, USA; Speedway High School 2020 graduate holds up her diploma while a family member takes a photo of her during the 2020 Speedway High School graduation ceremony held at the Indianapolis Motor Speedway. Mandatory Credit: Brian Spurlock-USA TODAY NETWORK

(Dkt. 1-1, Compl. Ex. 1 at 8.) There is no plausible allegation that Defendants "obtained" the images unlawfully.

Plaintiffs also argue that the Court should read "obtained" to mean "directly obtained from Imagn" and conclude that Section 7 cannot apply to a suit against those Defendants who are sub-licensees of Reuters and Sipa. (*See* Pl. Opp. at 12.) That cannot be correct, because the Contributor Agreements expressly grant Imagn the right to sublicense (*see*, *e,g.*, Spurlock Agr. ¶ 1), such that there would be entities that lawfully obtained images "directly" from Imagn and others that lawfully obtained them "indirectly" from Imagn's licensees. Plaintiffs' construction would perversely require that Imagn sue its direct licensee and the Photographers sue any sublicensees for the same alleged infringements.

Finally, Plaintiffs claim they satisfy the condition precedent in Section 7, arguing that they were given the requisite permission to sue when Imagn's President told them that this suit would be "baseless." (Kleinman Decl. ¶ 11.) That is not sufficient. Compliance with conditions

precedent to suit is a pleading obligation of the plaintiff, Fed. R. Civ. P. 9(c), and the Complaint makes no such allegations. *See Napster, LLC v. Rounder Recs. Corp.*, 761 F. Supp. 2d 200, 208 (S.D.N.Y. 2011) (even rote allegations of compliance with conditions precedent are not entitled to deference). Rather than appropriately plead the requisite permission, Plaintiffs misleadingly alleged that they had never granted Imagn any right to prosecute or settle infringement claims (Compl. ¶ 34.) In any event, Imagn's alleged statement was not permission to sue. The contract reposed in Imagn control of the decision of how to police the copyrights. If Imagn recognized that filing this lawsuit would be baseless, after investigating the matter and resolving it with its licensees, that was hardly a covert signal to Plaintiffs that they were free to bring this action.

## II.     THE RELEASES EXTINGUISHED THE CLAIMS AT ISSUE

Plaintiffs' arguments seeking to avoid the Releases fail. Section 7 of the Contributor Agreements, which authorized Imagn to settle these claims, is valid and applies to the alleged infringements here.

The Releases do not violate principles of property law. *Davis v. Blige* is inapposite because it concerned the rights of a copyright *co-owner* to retroactively license third-party uses of the work. 505 F.3d 90, 97-98 (2d Cir. 2007). *Davis* explained that copyright co-owners are effectively "tenants in common," such that one may not unilaterally bind the other to a retroactive license and thereby extinguish claims that had accrued in favor of the latter. 505 F.3d at 102-103. Imagn, by contrast, is Plaintiffs' *exclusive licensee*, the consequence of which is that after granting the license, Plaintiffs could not "use[] or exploit[]" the licensed rights themselves. *See id.* at 101; *see also Essex Music, Inc. v. ABKCO Music & Records, Inc.*, 743 F. Supp. 237, 241-42 (S.D.N.Y. 1990) (exclusive licensee may sue copyright owner for uses of the licensed rights). Plaintiffs entered the Contributor Agreements before the alleged infringement occurred. Thus, if a claim accrued, it accrued not in favor of Plaintiffs and Imagn together—like the co-

-5-

owners in *Davis*—but in favor of Imagn alone. Any claims for infringement have always been Imagn's to prosecute or settle, and the Releases did not extinguish any "vested" cause of action held by Plaintiffs. *See Davis*, 505 F.3d at 103.

Even if Plaintiffs had retained a right to prosecute infringements in tandem with Imagn, that would not have prohibited Imagn from settling. Although *Davis* held that licenses should only be given prospective effect in a co-ownership situation, it recognized that releases by their nature are retrospective and should be treated differently. *Id.* at 102 ("Licenses and assignments function differently from settlements and releases. . . . Settlements are generally retrospective. . . ."). Having expressly authorized Imagn to settle with alleged infringers, Plaintiffs have no basis to complain when Imagn did exactly that.

Plaintiffs' alternative argument that Imagn breached a fiduciary duty by entering the Releases fails because "no fiduciary duties arise where," like here, "parties deal at arm's length in conventional business transactions." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 104 (S.D.N.Y. 2013) (collecting cases and dismissing breach of fiduciary duty claim at pleading stage). The Contributor Agreements recite that the photographers are independent contractors and that no partnership or joint venture with Imagn exists. (*E.g.*, Spurlock Agr. ¶ 11(a)) These are integrated commercial contracts that set forth the "entire understanding" between Plaintiffs and Imagn. (*E.g.*, *id.* ¶ 11(e)) Nothing in the Complaint, opposition brief, or arbitration demand provides factual support to "infer[] that the trust and confidence [P]laintiff[s] reposed in [Imagn] was anything more than the type parties normally seek before entering an arms-length transaction." *Rogers v. HSN Direct Joint Venture*, 1998 WL 566804, at *3 (S.D.N.Y. Sept. 4, 1998). The *Genger* case cited by Plaintiffs is inapposite because it concerned releases entered on behalf of a trust by its *trustee*—a quintessential fiduciary—

rather than an arm's-length contractual counterparty like Imagn. *See Genger v. Genger*, 120 A.D.3d 1102, 1104 (1st Dep't 2014).

Plaintiffs attempt to create a factual question about whether Imagn was acting as their "agent" when it entered the Releases. (Pl. Opp. at 8.) But the effect of the Releases does not depend on what label applies to Imagn, because Section 7 unambiguously grants Imagn authority to settle claims of infringement. It is also immaterial that "Plaintiffs were not involved" in Imagn's resolution of infringement claims (Pl. Opp. at 7); Imagn alone had "sole and absolute discretion" under Section 7 to settle claims without permission or involvement from Plaintiffs.

Plaintiffs also suggest that unspecified "material breaches" by Imagn may have rendered the Contributor Agreements voidable. (Pl. Opp. at 7.) But any breaches would not automatically rescind the contracts or negate over 10 years of performance thereunder; Plaintiffs would have had to take "some affirmative steps" to rescind, which would "do no more" than curtail Imagn's rights "in the future." *Graham v. James*, 144 F.3d 229, 237-38 (2d Cir. 1998) (citation omitted). Plaintiffs did not seek to revoke Imagn's authority under the Contributor Agreements until they started the Arbitration and the Releases were already granted. In short, Plaintiffs have not identified any factual issues that would require further discovery regarding the Releases or their effect.[3] If, as Plaintiffs insist, the Releases were somehow improvident, their dispute is with Imagn and they are arbitrating that claim.

---

[3] Plaintiffs attempt to raise other factual issues in their counsel's affirmation, claiming the Releases have not been authenticated. (Kleinman Decl. ¶ 19.) The accompanying Supplemental Declaration of David S. Kleban and Declaration of David Korzenik aver that the copies of the Releases submitted with Defendants' moving papers are true, accurate, and complete. Plaintiffs also say they are unaware whether Reuters and Sipa have fulfilled the undertakings they made in exchange for the Releases. (*Id.* ¶¶ 17-18.) But it was the undertakings themselves—and not Reuters' or Sipa's acts at some unspecified point in the future—that satisfied the "condition" and supplied consideration for the release of claims.

Finally, Plaintiffs state that the Releases were not executed until after this litigation began and that standing is determined at the time a suit is commenced. (Pl. Opp. at 6.) This argument misapprehends the import of the Releases: they do not deprive the Plaintiffs of standing (Section 7 of the Contributor Agreements does that) but rather extinguish any and all substantive claims that they purport to assert. It is for that reason that Defendants have raised the Releases by way of summary judgment, and not under Rule 12.

### III.   PLAINTIFFS HAVE NOT SUFFICIENTLY PLEADED INFRINGEMENT

Even if Plaintiffs could surmount Section 7 of their agreements and the Releases, they have not adequately pleaded infringement. Plaintiffs argue that *Yamashita*'s holding—that a complaint is deficient if it asserts a mere suspicion, unsupported by factual allegations, that the defendant has violated license restrictions[4]—only applies "when the existence of a license is not in question." (Pl. Opp. at 20-21 (citing *Yamashita*, 936 F.3d at 105).) Even drawing all plausible inferences in Plaintiffs' favor, there is no such question.

The Complaint concedes that "Plaintiffs *license* their photos primarily through [Imagn], the photo *licensing* division of the USA Today Network." (Compl. ¶ 29 (emphasis supplied).) Plaintiffs also admit that, with their permission, Imagn sublicensed the photographs "to various media outlets." (*Id.* ¶¶ 28-29.) Indeed, such sublicensing was the purpose of the Contributor Agreements and the way that Plaintiffs "make their living." (*Id.* ¶¶ 28-30.) As noted above,

---

[4] As noted in Defendants' opening brief, Plaintiffs have alleged only that Defendants distributed the Plaintiffs' photographs "on an a la carte basis" and that, "on information and belief," they "did not obtain a license or proper authority to sell and distribute Plaintiffs' image archives on an a la carte basis prior to doing so, and/or acted outside the scope of any license(s) obtained." Compl. ¶¶ 36, 37, 44. Plaintiffs also allege, again on "information and belief," that "Defendants have purported to sublicense Plaintiffs' photos to other entities without the proper authority or a license from Plaintiffs." Compl. ¶ 45. The Complaint provides no clues about who those "other entities" might be or whether there are any actual *facts* that support the allegation.

Plaintiffs admit that Defendants are Imagn's "customers" and "clients" and had access to Imagn's photo library, and the Complaint's illustrative examples of infringement all credit Imagn as the source of the photos. These facts establish that Plaintiffs have failed to raise more than the "mere possibility of misconduct." *See Yamashita*, 936 F.3d at 104 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Putting aside Plaintiffs' concessions that the images were licensed, they have not met the applicable pleading standard, which requires that "particular infringing acts be set out with some specificity." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y.1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994). A complaint must set forth, among other elements, "by what acts during what time the defendant infringed the copyright." *Id.* at 36. In violation of that prong of the *Kelly* test, the Complaint here makes broad-brush allegations that all of Plaintiffs' thousands of registered images were infringed. (*E.g.*, Compl. ¶¶ 61-62.) Plaintiffs have not attempted to distinguish the *Cole* decision or the caselaw cited therein, which require a copyright plaintiff to do more than submit a chart of all of his registered photographs without specifying which ones were allegedly infringed. *See Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012). *Energy Intelligence* (Pl. Opp. at 23) is not to the contrary. There, the plaintiff adequately identified specific photographs that were allegedly downloaded to the defendant corporation's computer system, but infringement turned on whether a particular individual (who alone was authorized to access the photos) had downloaded them; that information was unavailable without discovery. *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015). The court distinguished "more public infringing activities" like those alleged in *Cole* and here. Plaintiffs speculate that there might have been additional infringing "content" available

only to those with customer accounts (Pl. Opp. at 23), but do not purport to have identified even the alleged infringements that they concede were in public view.

## IV.     ALTERNATIVELY, A STAY SHOULD BE GRANTED

Plaintiffs and Defendants appear to agree that this Court may be able to resolve the "threshold issues presented on Defendants' Motion" before considering a stay pending arbitration (Pl. Opp. at 25). Where the parties disagree is on whether discovery will be necessary to resolve the present motion or before a stay can be granted. The questions presented by this motion are whether Section 7 and the Releases are enforceable contracts. These are issues of law and of construction of unambiguous contract language—and they enable the Court to dismiss this action here and now. If any of the Plaintiffs' arguments did raise fact issues, they are issues that are squarely presented and more appropriately decided in the Arbitration with Imagn. If, for example, the validity or construction of the Contributor Agreements requires resort to extrinsic evidence, or the effectiveness of the Releases turns on whether Imagn had or breached any duties to Plaintiffs, those are issues that can only be resolved between Plaintiffs and Imagn. This Court cannot invalidate the contracts between Imagn and Plaintiffs in an action in which Imagn is not a party.

## CONCLUSION

The Complaint should be dismissed with prejudice; alternatively, the Court should stay this case pending the Arbitration.

Dated: June 22, 2021
      New York, New York

PATTERSON BELKNAP WEBB & TYLER LLP

By: */s/ Robert P. LoBue*
Robert P. LoBue
David S. Kleban
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
rplobue@pbwt.com
dkleban@pbwt.com

*Counsel for Defendant Thomson Reuters America Corporation*

MILLER KORZENIK SOMMERS RAYMAN LLP

By: */s/ David Korzenik*
David Korzenik
Terence Keegan
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
Telephone: (212) 752-9200
dkorzenik@mkslex.com
tkeegan@mkslex.com

*Counsel for Defendant Sipa Press Inc.*

VENABLE LLP

By: */s/ Meaghan H. Kent*
Meaghan H. Kent (*pro hac vice*)
William C. Lawrence
600 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 344-4000
mhkent@venable.com
wclawrence@venable.com

*Counsel for Defendant Adobe Inc.*