UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                                 :

BRIAN SPURLOCK *et al.*,                                        :

                      Plaintiffs,                      :           20 Civ. 9135 (JPC)

               -v-                              :           <u>OPINION AND ORDER</u>

THOMSON REUTERS AMERICA              :
CORPORATION *et al.*,                                  :

                      Defendants.                :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs, who are freelance photographers, commenced this action against Defendants for the unauthorized and infringing use of Plaintiffs' photographic works under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* Defendants Thomson Reuters America Corporation, Adobe Inc., and Sipa Press, Inc. (the "Moving Defendants") move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment pursuant to Rule 56 or to stay this action pending the outcome of an arbitration commenced by Plaintiffs against non-party Imagn Content Services, LLC ("Imagn"). For the reasons set forth below, the Court grants the Moving Defendants' motion to stay this action pending Plaintiffs' arbitration with Imagn, and denies without prejudice their motions to dismiss and for summary judgment.

I.      Background

A. Facts[1]

1. **The Contributor Agreements**

Plaintiffs are professional freelance photographers and photojournalists "who make their living primarily by obtaining media credentials to photograph sporting events and then subsequently licensing their photographs to various media outlets." Dkt. 1 ("Compl.") ¶ 28. Plaintiffs each license and distribute their photos through non-party Imagn, the photo licensing division of the USA Today Network, pursuant to contractual licensing agreements generally known as contributor agreements (the "Contributor Agreements"[2]). *Id.* ¶¶ 29-31. Under the terms of one set of Contributor Agreements, which are operative as to eight Plaintiffs (the "Pre-2020 Contributor Agreements"[3]), those Plaintiffs granted Imagn "the exclusive worldwide right to use, copy, perform, display, market, distribute, license, sub-license and negotiate the production rights of all photographic images, digital files, video images or footage and all other photographic materials" subject to those Plaintiffs' "limited right to license the Images to [their] own editorial

---

[1] The following facts are based on allegations in the Complaint and documents incorporated by reference or otherwise integral to the Complaint, specifically, the Contributor Agreements. In the analogous context of a motion to compel arbitration and for a stay, a court applies a standard similar to that for a summary judgment motion, and considers all relevant, admissible evidence submitted by the parties, with all reasonable inferences drawn in favor of the non-moving party. *See Sinavsky v. NBCUniversal Media LLC*, No. 20 Civ. 9175 (JPC), 2021 WL 4151013, at *1 n.1 (S.D.N.Y. Sept. 13, 2021) (citation omitted). In any event, none of these facts appear to be in dispute.

[2] The Contributor Agreements refer collectively to the licensing agreements between each Plaintiff and Imagn. Where there is any variance in the terms for one or more Contributor Agreements, the Court notes such variance as necessary.

[3] The Pre-2020 Contributor Agreements are the operative Contributor Agreements for Plaintiffs Adam Hunger, Dkt. 58, Exh. 1 at 53-62, Brian Spurlock, *id.* 73-82, Greg Cooper, *id.* at 111-20, James E. Brown, *id.* at 122-32, Mark Zerof, *id.* at 141-51, Stewart Milne, *id.* 160-68, Steven Mitchell, *id.* at 170-79, and Thomas Russo, *id.* at 181-88.

clients" under certain conditions. Pre-2020 Contributor Agreements § 1. Under the terms of the Contributor Agreements operative as to the remaining three Plaintiffs (the "2020 Contributor Agreements"[4]), those Plaintiffs granted Imagn "the perpetual worldwide right to reproduce, distribute, publicly perform, publicly display, market, license, sub-license and negotiate the rights to, edit, and otherwise use, all photographic images" subject to those Plaintiffs' "limited, non-exclusive right to license the Images to [their] own editorial clients" under certain conditions. 2020 Contributor Agreements § 1. Under both versions of the Contributor Agreements, Plaintiffs retained the copyrights in the photographs covered by the Agreements. Contributor Agreements § 1; Compl. ¶¶ 31-32.

Moreover, under section 5 of the Contributor Agreements, Plaintiffs granted Imagn and its affiliates, successors, and assigns:

> the right, in their sole and absolute discretion, to: (i) determine how the Images will be marketed, displayed and distributed to [Imagn]'s customers; (ii) edit, crop or modify the Images, including the captions and metadata that accompanies the Images; (iii) establish the terms and conditions, including the fees, for the license of the Images to [Imagn]'s customers; and (iv) perform its services without [Plaintiffs'] further approval.

Contributor Agreements § 5. The Pre-2020 Contributor Agreements provided that "any Image or Stock Image given to [Imagn] for distribution shall remain available for distribution by [Imagn] for a minimum of five (5) years from the date of receipt by [Imagn]." Pre-2020 Contributor Agreements § 5. Under the 2020 Contributor Agreements, "any Image given to [Imagn] for distribution in the future, or previously given to [Imagn], shall remain available for distribution by [Imagn] in perpetuity on an exclusive basis during the term of this Agreement and on a non-

---

[4] The 2020 Contributor Agreements are the operative Contributor Agreements for Plaintiffs Steve Flynn, Dkt. 58, Exh. 1 at 104-09, Noah Murray, *id.* at 134-39, and Ian Rutherford, *id.* at 153-58.

exclusive basis after termination." 2020 Contributor Agreement § 5. The 2020 Contributor Agreements further provided that "[Imagn] may allow [its] corporate affiliates, customers, and/or prospective customers to use Images with or without requiring that compensation be paid to [Imagn]." *Id.*

Contrary to Plaintiffs' allegations in the Complaint that they "have never authorized or permitted Imagn to act on their behalf in any respect with regard to potential violations or infringement of their copyrights" and "have never authorized or permitted Imagn to settle or release any copyright claims . . . that Plaintiffs may have against any third parties, including but not limited to claims against Defendants," Compl. ¶ 34, section 7 of the Contributor Agreements did grant Imagn certain rights to recover for unauthorized use of Plaintiffs' photographs. Section 7 of the Pre-2020 Contributor Agreements provided:

> In case of damage, destruction, loss or unauthorized use of any Images by any customer who lawfully obtained Images from [Imagn], [Plaintiffs] hereby grant[] [Imagn] full and complete authority to make claims or to institute proceedings in [Plaintiffs'] name[s] to prosecute such unauthorized use. In no event, however, shall [Imagn] be liable for such unauthorized use nor shall [Imagn] be required to take any action to prosecute such unauthorized use. Any recoveries shall be divided between [Plaintiffs] and [Imagn] 50/50, after deduction for the costs of any such actions incurred by [Imagn], including, without limitation, legal fees or other expenses. All settlements shall be made in [Imagn]'s sole and absolute discretion. If [Imagn] chooses not to pursue any legal action, [Plaintiffs] reserve[] the right to do so after notification from [Imagn].

Pre-2020 Contributor Agreements § 7. The corresponding provision of the 2020 Contributor Agreements regarding prosecution of unauthorized use of images granted Imagn:

> the exclusive right and authority to make claims or to institute proceedings for the infringement, misuse or unauthorized use of the Photographs, and to take any such action in its own or [Plaintiffs'] name[s] to prosecute such use, or to refrain from taking any action. In no event, however, shall [Imagn] be liable, either directly or indirectly, for misuse or unauthorized use, nor shall [Imagn] be required to take any action. Without in any way limiting the generality of the foregoing, [Imagn] is under no obligation to seek compensation for any misuses or unauthorized use and/or to give notice of such uses to anyone. All settlements shall be made in [Imagn]'s sole and absolute discretion, with settlement proceedings to be split

4

> equally with [Plaintiffs]. If [Imagn] chooses not to pursue any such claim, [Plaintiffs] may do so only if granted written permission by [Imagn].

2020 Contributor Agreements § 7.

In exchange for the rights granted to Imagn under the Pre-2020 Contributor Agreements, and as relevant here, Imagn agreed to pay those Plaintiffs a fee per assignment, such as per sporting event, "in lieu of any compensation" for the use of their photographs by Imagn's "editorial subscription based customers worldwide," but with an exception for "licensing proceeds for any commercial use or editorial a la carte sales." Pre-2020 Contributor Agreements § 6(a)(i)-(ii). Imagn agreed to pay those Plaintiffs commissions on fees collected from licensing any editorial or commercial *a la carte* photographs, and to deliver "a report listing the origin, description, and amount of sales" on a quarterly basis. *Id.* § 6(a)(iii), (b)(i). The 2020 Contributor Agreements likewise included a provision for assignment fees to "be paid to [Plaintiffs] in lieu of any other compensation" for the use of their photographs by Imagn's customers, "including but not limited to additional royalty payments." 2020 Contributor Agreements § 6(b). But to the extent Imagn should "receive payment for any commercial use of the Images," the 2020 Contributor Agreements provided that "any such net proceeds shall be split equally" between Imagn and those Plaintiffs. *Id.* § 6(e).

The Contributor Agreements also contained arbitration provisions. The Pre-2020 Contributor Agreements provided that "[a]ny dispute arising under this Agreement shall be determined and settled by arbitration in the Commonwealth of Virginia, pursuant to the rules of the American Arbitration Association." Pre-2020 Contributor Agreements § 11(b). The arbitration provision in the 2020 Contributor Agreements, which appears to be broader in scope, provided that "[a]ny dispute arising under or relating in any way to this Agreement or otherwise relating in any way to the Images shall be determined and settled exclusively by arbitration by a

5

panel of three arbitrators in the Commonwealth of Virginia in the County of Fairfax, pursuant to the rules of the American Arbitration Association." 2020 Contributor Agreements § 12(b).

### 2. Alleged Infringement of Plaintiffs' Works by Defendants

Plaintiffs allege that "[i]n or about March 2020," they "became aware that Defendants are offering many thousands of Plaintiffs' photographs for sale"—on an "*a la carte* basis"—on Defendants' various online platforms and that, on information and belief, Defendants have been doing so "for at least several years." Compl. ¶¶ 35-37. Plaintiffs contend that Defendants have violated their "exclusive rights in the photographs" because Defendants failed to obtain a valid license or permission from Plaintiffs or Imagn before "cop[ying], publish[ing], display[ing], and distribut[ing] Plaintiffs' copyrighted photos for purposes of selling *a la carte* licenses," and "[u]pon information and belief, to the extent Defendants did obtain any license to display and/or publish Plaintiffs' images, they acted outside the scope of that license by reselling the images on an *a la carte* basis, and further distributing the images to other sublicensing entities." *Id.* ¶¶ 63-65.

### 3. Arbitration Between Plaintiffs and Imagn

On April 13, 2021, Plaintiffs, joined by three other claimants (collectively, "Claimants"), filed a demand for arbitration with the American Arbitration Association, both individually and on behalf of a proposed class of all others similarly situated, against Imagn (the "Arbitration"). Dkt. 58, Exh. 1 ("Arbitration Demand"). The Arbitration Demand asserts claims for breaches of the Contributor Agreements and license violations, breach of the duties of good faith and fair dealing, breach of fiduciary duties, unjust enrichment, contributory and/or vicarious copyright infringement, and violation of New York's "Freelance Isn't Free" Act. *Id.* ¶¶ 90-118, 143-156. Claimants in the Arbitration also seek a declaration that section 7 of the Contributor Agreements

is invalid and any purported settlement agreements between Imagn and Reuters and Sipa, respectively, are void *ab initio*. *Id.* ¶¶ 119-142. On May 13, 2021, Imagn submitted an answering statement to the Arbitration Demand and asserted a counterclaim against Plaintiffs for breaching section 7 of the Contributor Agreements, including by "bringing the SDNY Action without first receiving Imagn's proper authorization" and "by continuing to press the SDNY Action even though Imagn has granted Reuters, SIPA, and their sublicensees full releases." Dkt. 64, Exh. 1 ¶¶ 4-5. In connection with Plaintiffs' alleged breach of section 7 of the Contributor Agreements, Imagn "seeks indemnification pursuant to the Agreements for the expenses" it has already endured and will endure in the future. *Id.* ¶ 8. On May 27, 2021, Plaintiffs submitted their answer to Imagn's counterclaim. Dkt. 64, Exh. 2.

**B. Procedural History**

Plaintiffs commenced this action on October 30, 2020. On May 10, 2021, the Moving Defendants filed a motion to dismiss the Complaint and, in the alternative, for summary judgment or to stay this action pending the outcome in the Arbitration. Dkt. 57 ("Motion").[5] The Moving Defendants argue that dismissal of this action is appropriate because Plaintiffs lack standing to assert a claim for copyright infringement against Defendants. *Id.* at 7-11. The Moving Defendants also argue that the Court should dismiss the Complaint for failure to state a claim because Plaintiffs' "theory of infringement is belied by the plain language of the Contributor Agreements" and because "Plaintiffs fail to properly set forth the acts of infringement about which they

---

[5] On May 7, 2021, Plaintiffs and Defendants Mainstream Data, Inc., ScanPix Baltics, TT News Agency, NTB ScanPix, Ritzau Buraeu A/S (ScanPix Denmark), Presse Sports, Real Time Images, and ImageGlobe (Belga Image) (collectively, the "Non-Moving Defendants") filed a stipulation and proposed order extending the time for the Non-Moving Defendants to answer or otherwise respond to the Complaint until 30 days after entry of ruling on the Moving Defendants' Motion. Dkt. 52. The Court so ordered that stipulation on May 10, 2021. Dkt. 53.

7

complain." *Id.* at 11-14.  In the alternative, the Moving Defendants argue that the Court should grant summary judgment because Plaintiffs, through Imagn, "have already released each of the Defendants from the liability they assert in this action." *Id.* at 19-21.  To the extent the Court declines to dismiss this action in its entirety pursuant to Rule 12(b)(6) or Rule 56, the Moving Defendants argue, in the alternative, that the Court should "stay this action to await the result of the Arbitration because it may render litigation of this case unnecessary." *Id.* at 16-17.  Plaintiffs opposed the Moving Defendants' Motion on June 4, 2021, Dkt. 63 ("Opposition"), and the Moving Defendants replied on June 22, 2021, Dkt. 66 ("Reply").

## II.    Legal Standard

A district court "may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (internal quotation marks omitted).  "Within the 'Court's inherent power to manage its docket' is the discretion to stay 'nonarbitrable claims' in favor of a 'pending arbitration,' even where the parties in the litigation and the arbitration are not identical." *BSG Resources (Guinea) Ltd. v. Soros*, No. 17 Civ. 2726 (JFK), 2017 WL 5897450, at *4 (S.D.N.Y. Nov. 29, 2017) (quoting *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 664-65 (S.D.N.Y. 2011)); *see also Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd.*, 640 F. Supp. 175, 178 (S.D.N.Y. 1986) ("All of plaintiff's claims against [the defendant] need not be addressed in the arbitration between plaintiff and [the third party] to support a stay of the entire action.").  Accordingly, courts have granted stays even where "the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against [the] non-arbitrating defendant." *BSG Resources (Guinea) Ltd.*, 2017 WL 5897450, at *4 (internal quotation marks

8

omitted, alteration in original); *see Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) ("It is appropriate, as an exercise of the district court's inherent powers, to grant a stay where the pending arbitration is an arbitration in which issues involved in the case may be determined." (internal quotation marks omitted)).

In assessing whether a stay is appropriate, a "[c]ourt must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10 Civ. 8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted). "The courts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources." *Midland Walwyn Cap. Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236 (LLM), 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992); *see Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008) ("Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results." (internal quotation marks omitted)). The moving party "bears the burden of demonstrating that . . . a stay is justified," *WorldCrisa Corp.*, 129 F.3d at 76, including showing that it "ha[s] not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." *Nederlandse Erts-Tankersmaatschappij, N.B. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964).

### III.  Discussion

The Court finds that a discretionary stay of this action pending a decision in the Arbitration is warranted. As an initial matter, there is a significant overlap between the pertinent facts and

claims in this action and in the Arbitration. In particular, this action concerns the validity and scope of the Contributor Agreements, including whether the Contributor Agreements conveyed exclusive licenses from Plaintiffs to Imagn, whether Plaintiffs contracted to Imagn the right to sue for infringement (and the circumstances in which Plaintiffs themselves may sue infringers), and whether, by virtue of section 7 of the Contributor Agreements and purported releases entered into by Imagn, Defendants have been released from liability. These issues are at the heart of what is to be resolved in the Arbitration.

For example, Claimants in the Arbitration, which include all Plaintiffs, allege that the Contributor Agreements did not convey any exclusive ownership interest in Claimants' photographs to Imagn. Claimants contend that "[a]lthough the word 'exclusive' is used in Section 1 of the Contributor Agreements, this is not dispositive of whether the parties in fact intended to convey any exclusive ownership interest in and to Claimants' photographs to Imagn" because various provisions in the Contributor Agreements "confirm that the fundamental purpose of the contracts was for Imagn to *use and license* the images, not become the owner of legal title thereto." Arbitration Demand ¶¶ 124-125. Moreover, Claimants allege in the Arbitration that Imagn breached the Contributor Agreements by, among other things, "[f]ailing to collect and pay out royalty payments for all *a la carte* sales of Claimants' photographs by itself and/or its licensees or customers in a timely manner" and "[p]urporting to settle claims on Claimants' behalf after expressly declining to investigate or pursue such claims, and after Claimants already exercised their right to pursue such claims," *id.* ¶ 91, and that Imagn "knowingly benefited from the infringement of Claimants' copyrights and thus should be held liable for secondary infringement of those copyrights," *id.* ¶ 152.

Claimants also seek in the Arbitration a declaration that section 7 of the Contributor

Agreements is "invalid as a matter of law" and, thus, the purported settlement agreements between Imagn and Reuters and Sipa, respectively, for any infringement of Claimants' copyrights in their photographs "are invalid and void." *Id.* ¶ 120.[6] Moreover, Claimants contend that "even if Section 7 of the Contributor Agreements *was* valid and Imagn *did* have the authority to settle Claimants' claims in the SDNY Action, Imagn did so in a manner inconsistent with the covenant of good faith and fair dealing and only after it effectively waived such right through its statements and conduct." *Id.* ¶ 134.

The arbitration panel's determination as to the scope and validity of the Contributor Agreements, including whether the Contributor Agreements conveyed exclusive licenses to Imagn and whether section 7 of the Contributor Agreements is valid and enforceable, is relevant to—and would at least partially determine—the issues of whether Plaintiffs have standing to bring this suit for infringement against Defendants, whether Defendants are liable for any infringement of Plaintiffs' copyrights in the photographs, and whether Defendants have any meritorious defenses that may bar Plaintiffs' right to recover for any alleged infringement by Defendants. *See, e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d. Cir. 2018) ("[A]n exclusive licensee is a 'legal owner' of an exclusive right for purposes of a copyright infringement action under section 501(b) whereas a non-exclusive licensee is not." (citation omitted)); *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) ("There are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyright material and may be granted to multiple licensees; and

---

[6] Defendants contend in their moving brief that, after learning in 2020 "of complaints from certain photographers that Imagn had allegedly not compensated them for certain observed uses in the media of their photographs," Reuters and Sipa "investigated and entered into negotiations with Imagn to resolve these issues." Motion at 6. This supposedly entailed "Reuters ma[king] an additional payment to Imagn for some licensed uses that remained outstanding" and "Sipa demonstrat[ing] to Imagn's satisfaction that all uses had been properly accounted for." *Id.* at 6-7.

exclusive licenses, which grant to the licensee the exclusive right—superior even to copyright owners' rights—to use the copyright material in a manner as specified by the license agreement.").

Plaintiffs oppose a stay on several grounds. First, Plaintiffs argue that a stay is not appropriate because "[e]ntering a blanket stay now, without first resolving the threshold issues presented on Defendants' Motion . . . will not promote efficiency or preserve resources." Opposition at 25. The Court disagrees. As just discussed, the issues presented in the Arbitration (*i.e.*, the proper scope and interpretation of the Contributor Agreement as well as Plaintiffs' and Imagn's respective rights and obligations thereunder) are inextricably related to the issues presented in the Moving Defendants' Motion and in this action more generally (*i.e.*, whether Plaintiffs may bring suit for copyright infringement against Defendants and whether Defendants may be held liable for any alleged infringement of Plaintiffs' photographs). Accordingly, stay of this action pending a decision in the Arbitration serves the interest of judicial economy and avoids possible inconsistent results between this action and the Arbitration.

Second, Plaintiffs argue that they will be prejudiced by the stay because "the initial phase of the arbitration will be focused on the issue of class certification . . . so staying these claims would cause significant delay of relevant discovery" and "Defendants have made no indication that they will cease their use, distribution, and sale of Plaintiffs' photos." *Id.* But a delay in discovery, alone, does not rise to the level of unfair prejudice warranting denial of stay. *Cf. Spinelli v. Nat'l Football League*, No. 13 Civ. 7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (granting request to stay discovery "pending determination of a dispositive motion that potentially eliminates the entire action" because "a delay in discovery, without more, does not amount to unfair prejudice" even though the case had been pending for two years). A stay may also benefit the parties by avoiding duplicative discovery in this action and the Arbitration, and

limiting the scope of discovery in the event some or all of Plaintiffs' claims are resolved in the Arbitration. And while Plaintiffs may be harmed by "further unauthorized distribution" of Plaintiffs' photographs by Defendants "where there is no effective means of tracking uses," Opposition at 25, staying this action pending the Arbitration is unlikely to further prejudice Plaintiffs in this regard given that any relief that Plaintiffs may be entitled to in this action would necessarily depend, at least partially, on the resolution of Plaintiffs' claims in the Arbitration.

Third, Plaintiffs argue that the Moving Defendants fail to show that a stay "will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party." *Id.* (quoting *Birmingham Assocs. Ltd.*, 547 F. Supp. 2d at 302. There is no indication that the Moving Defendants, who are not parties to the Arbitration, will hinder its progress or that the Arbitration will not proceed in a reasonable time.[7] And, as discussed above, because the Court finds that the issues in the Arbitration are inextricably related to the issues presented in the Moving Defendants' Motion, any delay that may occur due to the stay is unlikely to cause Plaintiffs undue hardship.

## IV.  Conclusion

For the foregoing reasons, the Moving Defendants' motion to stay this action pending the outcome of the Arbitration between Plaintiffs and Imagn is granted. The parties are directed to file a status letter by June 30, 2022 or within one week of a decision in the Arbitration, whichever

---

[7] Moreover, shortly before issuing this Opinion, the Court directed Plaintiffs to "file a letter updating the Court as to the Arbitration, including the status of discovery in the Arbitration, any proceedings that have occurred thus far, any upcoming deadlines, and the scheduled dates of any future proceedings or hearing." Dkt. 69. On February 24, 2022, Plaintiffs advised the Court that "a clause construction ruling regarding the availability of class arbitration under the relevant photographer agreements" appears to be forthcoming. Dkt. 70 at 1. Plaintiffs further reported that "all pre-hearing discovery and other proceedings in the Arbitration are stayed pending the issuance of the 'clause construction award,' and for a period of at least 30 days following such ruling to permit any party to move a court of competent jurisdiction to confirm or vacate the ruling." *Id.*

is earlier.  The Moving Defendants' motions to dismiss and for summary judgment are denied without prejudice.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 55, and to stay this case.

    SO ORDERED.

Dated: March 1, 2022
       New York, New York

                                      JOHN P. CRONAN
                              United States District Judge